# 25-100

## United States Court of Appeals

*for the*

## Second Circuit

SUSAN I. HEATH, Proposed Representative of
the Estate of Henry A. Hurst, III, Deceased

*Plaintiff-Appellant,*

– v. –

ECOHEALTH ALLIANCE, INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## PLAINTIFF-APPELLANT'S OPENING BRIEF

PATRICIA FINN
PATRICIA FINN ATTORNEY, P.C.
*Attorney for Plaintiff-Appellant*
275 N Middletown Rd Ste 1E
Pearl River, New York 10965
(845) 398-0521

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS....................................................1

STATEMENT REGARDING ORAL ARGUMENT.................................................2

JURISDICTION AND SUBJECT MATTER STATEMENT................................2

STATEMENT OF ISSUES PRESENTED FOR REVIEW......................................2

STATEMENT OF RELATED CASES.....................................................3

STATEMENT OF THE CASE............................................................3

    A. Proceeding in District Court...............................................3

    B. Statement of the Facts....................................................8

    C. Rulings on Review........................................................14

STANDARD OF REVIEW..............................................................20

SUMMARY OF THE ARGUMENT.........................................................22

ARGUMENT........................................................................25

ISSUE ONE: The District Court Applied the Wrong Standard
           for a Motion to Dismiss…………………………………………...25

  A. Debarment of EcoHealth and Judicial Notice...............................31

  B. Unresolved State Law Issues Requiring Certification to the
    New York Court of Appeals...............................................32

  C. Errors in the District Court Finding.....................................33

    1. No Duty Owed Under New York Law…………………………34

    2. Funding An Activity Does Not Eliminate Liability……………………35

i

3. Speculative Harm……………………………………………...…..36

4. Concerns Over Unlimited Liability……………………………..36

D. Questions to be Certified…………………………………….…..37

ISSUE TWO: New York's Strict Liability and Negligence Principles
   Apply to Abnormally Dangerous Activity and Cover-up................38

A. Strict Liability...............................................................................38

1. Existence of a High Degree of Risk of Harm………………….…39

2. Likelihood That the Harm Will Be Great……………………….....40

3. Inability to Eliminate the Risk By Exercising Reasonable Care………..40

4. Extent to Which the Activity Is Not a Matter of Common Usage……...41

5. Inappropriateness of the Activity to Its Location………………………41

6. Extent to Which the Activity's Value Is Outweighed by Its Dangers.....42

B. Negligence.....................................................................................44

C. Duty, Breach and Injury................................................................45

D. Exaggerated Concerns of Limitless Liability…………………….....48

E. Serious Injuries Distinct from General Exposure to Covid 19……………..50

ISSUE THREE: Respondents' Argument that Plaintiff Lacked
    Standing Ignores the Relation-Back Doctrine............................51

A. New York's Relation-Back Doctrine Expressly Preserves
  Wrongful Death Claims................................................................52

B. EcoHealth's Authorities Are Inapplicable to Relation-Back
  in Wrongful Death Actions...........................................................54

C.  The Relation-Back Doctrine Serves Important Policy Objectives................55

CONCLUSION................................................................................................56

CERTIFICATE OF COMPLIANCE....................................................................58

CERTIFICATE OF SERVICE.............................................................................59

# TABLE OF AUTHORITIES

**Case**             **Page(s)**

*Amaro v. City of New York*, 40 N.Y.2d 30 (1976)…………………………………...30

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997)…………………..21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)………………………………………….20, 26

*Bank Markazi v. Peterson*, 578 U.S. 212 (2016)…………………………………16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)…………………………20, 22, 26

*Bruesewitz v. Wyeth LLC*, 562 U.S. 223 (2011)………………………………15, 27

*Caffaro v. Trayna*, 35 N.Y.2d 245 (1974)…………………………………………55

*Camenate v. City of NY*, 59 A.D.3d 152 (3d Dep't)………………………………53

*Carrick v. Cent. Gen. Hosp.*, 51 N.Y.2d 242 (1980)…………………………..52, 53

*Doe v. Gonzales*, 449 F.3d 415 (2d Cir. 2006)……………………………………16

*Doundoulakis v. Town of Hempstead*, 42 N.Y.2d 440 (1977)……………..22, 39, 41

*Easton v. Sundram*, 947 F.2d 1011 (2d Cir. 1991)………………………………...25

*Elliott v. City of New York*, 95 N.Y.2d 730 (2001)………………………………...21

*Forbes v. Aaron*, 81 A.D.3d 876 (2d Dep't 2011)…………………………………44

*Glanzer v. Shepard*, 233 N.Y. 236 (1922)…………………………………………45, 46

*Golden v. EcoHealth,* Index No. 157687/2023 (Sup. Ct. N.Y. Cnty.), appeal pending, Case Nos. 2024-00868, 2024-02096 (App. Div. 1st Dep't)……………..30

*Gurary v. Winehouse*, 190 F.3d 37 (2d Cir. 1999)………………………………...21

*Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222 (2001)…………………24, 46, 47

*Heath v. EcoHealth*, No. 1:23-cv-08930 (JLR), 2024 U.S. Dist. LEXIS 231002 (S.D.N.Y. Dec. 19, 2024)……………………………………………………………………………...3

*In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124 (9th Cir. 2002)……29, 39

*In re N.Y. City Asbestos Litig.*, No. 2021-06326 (1st Dep't Nov. 16, 2021)………48

*In re Opioid Litig.*, 2018 N.Y. Slip Op. 31228 (N.Y. Sup. Ct. 2018)….36, 47, 48, 51

*In re September 11 Litigation*, 280 F. Supp. 2d 279 (S.D.N.Y. 2003)………...47, 51

*In re Thelen LLP*, 24 N.Y.3d 16 (2014)……………………………………...21, 33, 37

*In re Vioxx Products Liability Litigation*, 414 F. Supp. 2d 574 (E.D. La. 2007)……………………………………………………...47, 51

*Johnson v. Bryco Arms*, 304 F. Supp. 2d 383 (E.D.N.Y. 2004)…………..36, 47, 50

*Karras v. Margaret Tietz Ctr. for Nursing Care, Inc.*, 61 Misc. 3d 1222(A) (Sup. Ct. Queens Cnty. 2018)……………………………………54

*Lancaster Co. v. Propane Gas*, 75 A.D.2d 55 (N.Y. App. Div. 1980)……………39

*Lehman Bros. v. Schein*, 416 U.S. 386 (1974)…………………………………………21

*Marino v. Lehmaier*, 173 N.Y. 530 (1903)……………………………………………..45

*McKinnis v. EcoHealth Alliance*, No. 154003/2022 (Sup. Ct., N.Y. Cnty.), appeal pending, Case No. 2023-09276, 2023-02283 (App. Div. 2d Dep't)…………*passim*

*Mendez v. Kyung Yoo*, 23 A.D.3d 354 (2005)……………………………………..53

*Militrano v. Lederle Laboratories*, 26 A.D.3d 475 (N.Y. App. Div. 2006)………………………………………15, 27, 38

*Nicholson v. Kevspan Corp.*, 65 A.D.3d 1025 (2d Dep't 2009)………………...39

*Palka v. ServiceMaster Mgt. Servs. Corp.*, 83 N.Y.2d 579 (1994)………..49, 50, 51

*Pilliod v. Monsanto Co.*, 67 Cal. App. 5th 591 (Cal. Ct. App. 2021)…………47, 51

*Railroad Comm'n of Tex. v. Pullman Co*., 312 U.S. 496 (1941)…………………..31

*Spahic v. Int'l Ctr. for Transitional Just. Inc.,*
 2019 WL 7605895 (S.D.N.Y. Apr. 25, 2019)…………………………..24, 54

*Spano v. Perini Corp*., 25 N.Y.2d 11 (1969)…………………………………..22, 29

*State of Missouri v. People's Republic of China*,
 Case No. 1:20-cv-00099-SNLJ (USDC EDM, Southeastern District)…….12

*Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58 (2d Cir. 2018)………………………..33

*United States v. Philip Morris USA Inc*., et al., 449 F. Supp. 2d (D.C. 2006)...27, 51

*United States v. Stevens*, 994 So. 2d 1062 (Fla. 2008)………………..21, 32, 38, 40

*Vasquez v. Wood*, 18 A.D.3d 645 (2005)…………………………………………..53

*Vega v. EcoHealth Alliance*, No. 151852/2023 (Sup. Ct., N.Y. Cnty.), appeal
pending, Case No. 2024-00704, 2024-04549 (App. Div. 2d Dep't)…………*passim*

*Williams v. United States*, 947 F.2d 37 (2d Cir. 1991)…………………………….55

*Ziga v. Int'l Ctr. for Transitional Just. Inc*.,
 2019 WL 4784675 (S.D.N.Y. Sept. 27, 2019)…………………………24, 54

## Statutes & Other Authorities

2 CFR § 200.331 (Prime contractor responsibility for
 ensuring subcontractor compliance)……………………………………….45

18 U.S.C. § 1001 (False statements)……………………………………………...42

22 NYCRR § 500.27 (Certification of questions to
 New York Court of Appeals)…………………………………….21, 37, 56

28 U.S.C. § 1291 (Jurisdiction over final decisions of district courts)……………..2

28 U.S.C. § 1332(a)(1) (Diversity jurisdiction)………………………….…2, 3

31 U.S.C. §§ 3729-3733 (False Claims Act)…………………………………42, 45

35 U.S.C. § 200-212 (Patent rights in inventions
 made with federal assistance)…………………………………………………45

42 U.S.C. § 262a(b)(1) (Regulation of certain biological agents and toxins)…….42

48 CFR § 52.246-8 (Inspection of research and
 development - cost reimbursement)………………………………………..45

CPLR § 205(a) & (f) (New York relation-back doctrine)…………………....*passim*

CPLR § 3211 (Motion to dismiss)…………………………………………..27

CPLR § 4511 (Judicial notice of law)………………………………………30

Federal Rule of Appellate Procedure (FRAP) 4(a)(1)(A)
 (Appeal as of right—when taken)…………………………………………20

Federal Rule of Civil Procedure (FRCP) 12(b)(6)
 (Motion to dismiss for failure to state a claim)……………………………..2

Federal Rule of Evidence (FRE) § 201 (Judicial notice)…………………………16

National Vaccine Injury Compensation Act (NVCIA)………………..15, 17, 27, 28

Public Readiness and Emergency Preparedness (PREP) Act…………15, 17, 27, 28

Restatement (Second) of Torts § 402A (Special liability of seller
 of product for physical harm to user or consumer)……………………….. 39

Restatement (Second) of Torts § 520
 (Abnormally dangerous activities)…………………………..…23, 29, 38, 39

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal:

The Plaintiff-Appellant is Susan I. Heath, ("Appellant" or "Heath") as duly appointed representative of her husband Henry A. Hurst's estate ("Henry"). The trial counsel for the Appellant Heath were Patricia Finn, Esq., and Robert Bruce Kipps, Esq. Appellate counsel is Patricia Finn, Esq., of Patricia Finn Attorney, P.C.

The Defendant-Appellee is EcoHealth Alliance, Inc., ("Appellee" or "EcoHealth"), a non-profit corporation organized under the laws of the State of Massachusetts, headquartered in New York City. Trial court counsel for EcoHealth was Madison Torsiello, Esq., Juan Samuel Olivo-Castro, Esq., Michael J. Grundberg, Esq. Appellate Counsel is Andrew N. Krinsky, Esq., Nels T. Lippert, Esq., Juan Samuel Olivo-Castro, Esq., with Tarter Krinsky & Drogin LLP.

Presiding in the District Court was the Hon. Jennifer L. Rochon, United States District Court for the Southern District of New York.

March 11, 2025                              Respectfully submitted,

                                           /s/ Patricia Finn, Esq.

1

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 2ⁿᵈ Cir. R. 28.2.4, Appellant Heath requests that this Court grant oral argument. Because the issues presented herein are of first impression, oral arguments would be of benefit for this Court and would enhance the quality of the Court's consideration of this appeal and its decision-making.

## JURISDICTION AND SUBJECT MATTER STATEMENT

The appeal is properly before this Court under 28 U.S.C. § 1291, which grants jurisdiction over final decisions of the district court. The lower court for the Southern District of New York (SDNY) exercised subject matter jurisdiction based on 28 U.S.C. § 1332(a)(1), (diversity jurisdiction).

The district court dismissed the case with prejudice on December 19, 2024. (Appendix ("A") A165 to A179) at Appellant Heath timely filed a Notice of Appeal on January 9, 2025, under FRAP 4(a)(1)(A). (A1).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

**ISSUE ONE:** Whether the district court mischaracterized Heath's strict liability and negligence claims as a mere dispute over funding, failing to recognize EcoHealth's direct involvement in unauthorized Gain-of-Function (GOF) virus manipulation and research at its subcontractor laboratory in Wuhan, China, which caused Appellant's injuries?

2

**ISSUE TWO:** Whether EcoHealth is strictly liable for Heath's injuries under New York's strict liability and negligence laws, given its unauthorized GOF virus manipulation and vaccine research—both ultra-hazardous activities—conducted at its subcontractor laboratory in Wuhan, China?

**ISSUE THREE:** Whether the district court erred in dismissing Heath's claims and denying her amendment and caption change, despite New York's relation-back doctrine, CPLR § 205(a), which permits substitution of a duly appointed estate representative in a wrongful death action?

## STATEMENT OF RELATED CASE

The district court's Opinion and Order is published at *Heath v. EcoHealth,* No. 1:23-cv-08930 (JLR), 2024 U.S. Dist. LEXIS 231002 (S.D.N.Y. Dec. 19, 2024), Hon. Jennifer L. Rochon of the United States District Court for the Southern District of New York presiding. (A165 to A179).

## STATEMENT OF THE CASE

### A. Proceeding in District Court

On October 10, 2023, Appellant Susan I. Heath timely filed a Complaint in the United States District Court for the Southern District of New York, invoking diversity jurisdiction under 28 U.S.C. § 1332(a)(1). (A2 to A19). EcoHealth did

not contest jurisdiction at the district court level, and subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) is undisputed on appeal. New York substantive law applies.  (A168). Heath seeks damages under the New York Wrongful Death Statute for loss of companionship, medical expenses, and other pecuniary losses. (A165).

The Complaint alleged that EcoHealth engaged in abnormally dangerous GOF virus manipulation and vaccine research at its subcontractor's laboratory, the Wuhan Institute of Virology in Hubei Province, China ("Wuhan Lab" or "WIV"). (A2 to A11). Heath alleged that EcoHealth knowingly conducted unauthorized GOF virus research at the Wuhan Lab, deliberately modifying bat coronaviruses to increase human infectivity. (A4, A14, A26, A27, A31-A40, A176). The GOF virus research at issue was described by EcoHealth as targeting vulnerable populations who were at *high-risk* to zoonotic infection, including the Heath's husband Henry, who was at risk to zoonotic (animal to human) infection. (A15, A26 to A27, A120, A164 to A166, A284, A309, A377). This was an important part of EcoHealth's GOF research to create a disease that affected vulnerable populations that could also be prevented with a universal vaccine. (A4, A15, A26-A27, A31-A40, A137, A153, A165, A167, A176, A181, A197).

The outcome of this research was a man-made SARS-CoV-2, *ultra-hazardous* virus that was released into the environment fatally infecting Henry.

4

(A4, A5, A18, A165). Heath alleged in her Complaint that EcoHealth's GOF virus manipulation creating SARS-CoV-2, commonly known as Covid 19, was an abnormally dangerous activity that caused Henry's death by infection. (A31-A40). Once exposed to Covid 19, Henry became seriously ill and slowly suffocated to death. Henry's cause of death was listed on the death certificate as Covid 19. (A4 to A5, A16 to A18, A165).

By EcoHealth's own description, it was engaging in high risk pathogen research at the Wuhan Lab designed to create a SARS-like virus in pursuit of a putative cure, i.e., a universal vaccine. (Record on Appeal (ROA) Doc. # 30 at 3)[1]. EcoHealth's conduct in creating SARS-CoV-2 was abnormally dangerous. (A7, A16, A25, A173 to A176). Its release into the environment, and its cover-up, negligently injured Henry. In the absence of any type federal authorization or liability protection for the type of unauthorized GOF virus manipulation going on in Wuhan, strict liability and negligence principles apply pursuant to New York law. (A7, A16,)

The Complaint asserted that EcoHealth's supervisory negligence of its subcontractor lab in Wuhan caused the release of the deadly virus Covid 19, that rapidly spread as designed, infecting and killing Henry. (A7, A16, A165, A172).

---

[1] "Here, the evolution of the SARS-CoV-2 virus that allowed the virus to pass from animals to humans was an unforeseeable consequence of the situation created by the Defendant's alleged negligence." Def. Opp. Brief ROA #30 at 13, ¶2, ln. 1-2.

5

The Complaint further alleged that EcoHealth knew, or should have known, the
Wuhan Lab was a notoriously unsafe facility, and had a long history of serious
biosafety accidents. (A7, A16, A176). Contrary to the defense, EcoHealth was
100% responsible for its subcontractor's activities in Wuhan creating Covid 19,
releasing it into the environment, and covering up its man-made, lab-origin to
deflect liability. See 48 CFR § 52.246-8; 31 U.S.C. § 3729-3733 (False Claims); 2
CFR § 200.331; 35 U.S.C. § 200-212. (ROA #30 at 7-8, A4-A6, A26 to A28, A39-
A52, A140-A151).

EcoHealth's conduct constituted *ultra-hazardous* activity, as defined by New
York law, making it strictly liable for the resulting harm to Henry, regardless of
precautions taken, intention, or fault. (A6 to A7, A26 to A28, A37 to A39, A140 to
A152). The second cause of action for negligence, further alleged that EcoHealth's
failure to properly oversee, control and report the pathogenic enhancements to
National Institutes of Health (NIH), per the terms of its grant funding and federal
regulations led to the release, and cover-up, of SARS-CoV-2's lab-origin. (A4 to
A6, A128, A132-A137, A140 to A152).

On March 8, 2024, EcoHealth moved to dismiss Heath's Complaint pursuant
to Rule 12(b)(6), arguing that anything that happened in China was the fault of the
Wuhan Lab. (ROA # 30; A26 to A28). EcoHealth asserted that it merely funded
scientific bat coronavirus research, but was never engaged in GOF virus

6

manipulation in Wuhan, and therefore, bore no liability. Id. This defense is meritless. (ROA #37, Pl. Response; A33 to A36, A37 to A39, A126 to A139, A140 to A152).

EcoHealth defended that applying New York law strict liability does not apply to GOF virus manipulation and vaccine research. (ROR # 30). EcoHealth further defended against the negligence claim, asserting that it owed no duty of care to Henry. *Id*. It sought dismissal of both the strict liability and negligence claims as inapplicable to its mere funding of the Wuhan Lab for the purposes of conducting " research to identify hundreds of new coronaviruses in bats...[t] he purpose of this research is to identify high risk populations so that international agencies can leverage their resources to address potential pandemics. *Id*. at 7.

In other words, EcoHealth asserted that it had no liability for modifying ordinarily benign bat coronaviruses to infect human cells and for targeting high-risk individuals like Henry with a universal vaccine intended to protect them. Id. (A140 to A151). However, these research activities, as well as EcoHealth's conduct, were specifically described in affidavits and numerous interviews with EcoHealth's former lead scientist and virus hunter, Peter Daszak, Ph.D. (A26 to A29). This was prior to the discovery of Covid 19 in the fall of 2019, and Dr.

Daszak being recently fired from EcoHealth on January 17, 2025.[2]  Contrary to the

defense, in assuming a putative responsibility to "*protect" high risk populations*

*from zoonosis spillover*," (ROR # 30 at 3). EcoHealth assumed a concomitant duty

not to infect Henry with its man-made zoonosis disease SARS-CoV-2 created at

the Wuhan Lab. Id.

On March 8, 2024, EcoHealth moved to stay discovery pending resolution of

its motion to dismiss. (A23 to A25).

On March 14, 2024, Heath timely opposed the stay, and sought limited

discovery seeking to obtain newly disclosed evidence of EcoHealth's direct

involvement in GOF research in Wuhan, that had been furnished to Congress by

subpoena.[3] (A33 to A36). Heath sought information "[a] s discussed during the

January 11, 2024 Pre-Trial Conference, the Defendant acknowledged the

information sought in the RFP has already been disclosed to Congress, but directed

Plaintiff to the internet to locate it rather than have Defendant produce the same

information in response to the RFP."  Id.

---

[2] On January 8, 2025, Defendant Peter Daszak was terminated by EcoHealth's Board of Directors
as its President and Lead Scientist.
https://oversight.house.gov/wp-content/uploads/2025/01/Dr.-Peter-Daszak-HHS-Notice_Jan-17-2025_Redacted.pdf

[3]

Heath also sought insurance information regarding a contract indemnification clause for laboratory "accidents" and "evacuations" between EcoHealth and the Wuhan Lab, that was information partially disclosed contained within exhibits attached to the motion to dismiss. (A34-A36). Heath sought copies of the insurance policies. Id. She also sought transcripts of Peter Daszak's sworn testimony and other relevant documents turned over to the Congressional Select Subcommittee on Coronavirus, during the federal investigation into EcoHealth's involvement in the origin of Covid 19. See "HHS Formally Debars EcoHealth Alliance, Dr. Peter Daszak After Covid Select Subcommittee Reveals Pandemic Era Wrongdoing." [4] (A33 to A36).

In an Order dated March 25, 2024, the district court denied Heath's request for discovery unfairly limiting her ability to substantiate the claims. (A53 to A55). ROA #36.

On December 19, 2024, the district court issued the Opinion and Order now on appeal, granting EcoHealth's motion to dismiss with prejudice and holding that the Complaint failed to plausibly allege that EcoHealth's man-made SARS-CoV-2 virus caused Henry's death. (A165 to A179). The district court mischaracterized Heath's claims as a mere funding dispute over a bat study sub-awarded by

---

[4] https://oversight.house.gov/release/breaking-hhs-formally-debars-ecohealth-alliance-dr-peter-daszak-after-covid-select-reveals-pandemic-era-wrongdoing/

EcoHealth to the Wuhan Lab, leading to the improper dismissal of the strict liability and negligence claims, which should be reversed on appeal.

**B. Statement of the Facts**

On October 10, 2023, Appellant Susan I. Heath, as the widow and proposed representative of Henry A. Hurst III, filed a wrongful death lawsuit against EcoHealth, asserting claims based on strict liability and negligence pursuant to New York law. (A2 to A20). The Complaint alleged, through GOF virus manipulation, that EcoHealth engineered the SARS-like coronavirus, commonly known as Covid 19, that infected and killed Henry. Id. EcoHealth was funding GOF virus research at the Wuhan Lab using a mixture of public and undisclosed private funding sources. (A5 – A6, A38, A130, A132, A144, A148 to A150,).

EcoHealth was using GOF to teach ordinarily benign bat viruses to be highly contagious and infectious to humans. (ROA # 30 at 7). Pursuant to New York law, this would be treated as abnormally dangerous activity to which strict liability applies. The Complaint alleged the GOF virus research that killed Henry was conducted in violation of federal and state law, as well as in violation of EcoHealth's contract terms with the NIH establishing *per se* negligence. (A6 to A8, A37 to A39, A140 to A152).

Applying New York law, the type of GOF experimentation in Wuhan would be subject to both strict liability and negligence principles for any resulting

10

injuries. The evidence proffered by Heath in support of these claims, even before her limited discovery requests were denied, overwhelmingly demonstrated that EcoHealth's involvement in GOF at the Wuhan Lab, extended far beyond merely funding a bat study to infect humans in need of a vaccine. (A126 to A139).

EcoHealth was more than a passive funder in the creation of Covid 19. EcoHealth directly engaged in the collection, manipulation and transportation of bat coronavirus samples around the world *via* commercial courier for pathogen enhancement at their partner laboratories. This was an abnormally dangerous activity. EcoHealth's former lead scientist, Dr. Daszak, was harvesting bat viruses and shipping them globally to laboratories and research partners in the United States and China for genetic enhancement, an *ultra-hazardous* activity. (A49).

After years of experimentation, EcoHealth successfully created SARS-CoV-2 using virus samples harvested by Dr. Daszak from bat caves in the United States, China, and other locations. (A49). Photos posted by Dr. Daszak on social media show him inside bat caves, wearing a hazmat suit and disturbing bat habitats to collect coronavirus samples. These viruses had remained dormant for thousands of years until EcoHealth extracted and manipulated them in its partner laboratories in North Carolina, Wuhan, and elsewhere. This constitutes an abnormally dangerous activity. *Id.*

EcoHealth directly collected and manipulated bat coronaviruses, engineering them to infect human cells. Its direct involvement in Gain-of-Function (GOF) research created a clear chain of causation linking its fieldwork, laboratory activities, the release of SARS-CoV-2, and its subsequent cover-up. *Id.* The enhanced virus ultimately infected Henry, directly tying EcoHealth's abnormally dangerous conduct to Heath's specific injuries. (A4, A166).

EcoHealth's activities established a clear causal link between its hands-on research and the release of SARS-CoV-2, which fatally infected Henry. This demonstrated proximate cause, directly connecting its hazardous conduct to Heath's injuries and establishing a direct nexus. Moreover, this evidence confirmed the direct contact and special relationship between the parties, which the district court erroneously found lacking.

Around the same time COVID-19 was created, EcoHealth and its global partner scientists were positioning themselves to supply the supposed cure—a universal vaccine. (A4, A15, A26-A27, A31-A40, A137, A153, A165, A167, A176, A181, A197). This vaccine was designed for the very SARS-CoV-2 virus they engineered and released from the Wuhan Lab. *Id.* This is highly significant because it reframes the narrative from routine scientific research to a high-risk, profit-driven endeavor: developing a universal vaccine for a virus that did not exist

in nature, and would not exist until EcoHealth created it using GOF. (A5 – A6, A38, A130, A132, A144, A148 to A150).

In September 2021, Henry contracted COVID-19 shortly after the virus was reported as circulating in the United States during the lockdown. (A5). His diagnosis, documented in medical records as the cause of death, serves as presumptively valid evidence of infection. This evidence sufficiently establishes direct and proximate causation between Henry's COVID-19 infection and his death. Id. Following its release from EcoHealth's laboratory in Wuhan, the virus spread rapidly as designed, ultimately infecting Henry's lungs, causing severe respiratory distress, and leading to his death by suffocation. (ROA # 30 at 1, 2, 5; A6).

Heath presented overwhelming evidence in support of her allegations showing that EcoHealth was directly involved in Henry's infection. (A10 – A18, A56 to A154). Heath clearly established with direct evidence a causal link between EcoHealth's GOF virus manipulation, the release of SARS-CoV-2 from the Wuhan Lab, the cover-up and Henry's death by infection. Id. It was foreseeable that once the virus was released, not knowing the source of the infection, this would adversely affect Henry's medical care and treatment when he became ill prolonging his pain and suffering.

13

To evade liability, EcoHealth collaborated with partner scientists to fabricate a false narrative that SARS-CoV-2 originated from a natural spillover at a wet market just blocks from the Wuhan Lab. However, to this day, despite the collection of 80,000 samples, no intermediary animal host has been identified to support a species jump or a natural origin for COVID-19. (A77 to A121, A133). The wet market hypothesis was later discredited during a federal investigation as a deliberate cover story orchestrated by EcoHealth and its partner scientists to shift blame. Id.

Subsequent government investigations confirmed, more likely than not, the Covid 19 virus that infected Henry came from EcoHealth's subcontractor laboratory in Wuhan, where EcoHealth was investigating the ability of bat viruses to infect humans "*with an eye toward vaccines.*" *Vega et al. v. EcoHealth Alliance, Inc., et al.,* No. 151852/2023 (Sup. Ct., N.Y. Cnty.) at 5. (ROR # 30 at 15).

While this was all happening, EcoHealth was actively concealing its role in the virus' origin to avoid culpability. There was a lot more going on in China then the mere funding of a bat study prior to the release of SARS-CoV-2 from the Wuhan Lab. *See State of Missouri vs. People's Republic of China*, Case No. 1:20-cv-00099-SNLJ, USDC EDM, Doc. #95. [5] Despite this effort to avoid blame for

---

[5] *See State of Missouri vs. People's Republic of China*, Case No. 1:20-cv-00099-SNLJ, USDC EDM, Southeastern District, Doc #95 (entering a judgment against

Covid 19, the record demonstrates EcoHealth's abnormally dangerous activities were directly connected to Henry's death. (A2 to A18).

EcoHealth's subcontractor agreements with the Wuhan Lab explicitly included indemnification provisions for 'accidents' and 'evacuations' arising from their high-risk Gain-of-Function (GOF) virus manipulation. (A37 to A52). When Heath sought access to the related insurance policy information, the district court improperly denied the request, constituting an abuse of discretion. (A34-A36). In its memorandum supporting dismissal, EcoHealth admitted that 'the purpose of this research is to identify high-risk populations' vulnerable to zoonotic infections. It was widely known that the Wuhan Lab operated with inadequate biosafety measures and had a history of frequent accidents. (ROR #30 at 3).

In September 2021, the virus reached Henry and his wife in their home during lockdown. Despite isolating, they became ill. SARS-CoV-2 directly infected Henry's lungs, rendering him unresponsive. He remained in that state for 23 days before passing away alone, in isolation, in a hospital. Unlike the general population, many of whom were exposed but remained asymptomatic or experienced only mild symptoms, Henry suffered severe injuries that were

---

China for $24 billion to suppress information about Covid 19 and hoard PPE equipment).

different in kind, not just degree, from the broader population's exposure to COVID-19.

An injury in kind, not degree refers to a qualitative difference in harm rather than a quantitative one. This distinction is particularly relevant to Henry as it differentiates his fundamentally different type of harm rather than the general public exposed to a public health crisis. The district court improperly dismissed Heath's by conflating her personal injury claim with the generalized harm caused by the pandemic. This was a critical error, as Heath has personal injuries and a wrongful death action that is a special injuries, qualitatively different *in kind* from the broader public's exposure to the man-made Covid 19, that infected and killed Henry.

EcoHealth's abnormally dangerous conduct—unauthorized GOF research, concealment of biosafety violations, and failure to warn—compromised public health and safety, resulting in a specific injury to Henry, who suffered severe harm. His medical treatment was negligently and adversely affected by the lack of knowledge about the man-made nature of the virus infecting him. Heath may assert strict liability and negligence for the special injury she incurred as a direct consequence of the pandemic, while recognizing that she is not suing for the general inconvenience caused by the pandemic's existence

16

These are the facts of the case.

## C. Rulings on Review

The district court mischaracterized the Complaint, failing to afford Heath's well-pleaded allegations the benefit of favorable inferences. It disregarded evidence demonstrating EcoHealth's direct involvement in GOF virus manipulation in Wuhan, which led to Henry's fatal infection. (A165 to A179). The court also overlooked EcoHealth's concealment of the virus's origin and release into the environment, its fabrication of a false natural-origin narrative to evade liability, and the detrimental impact of these actions on Henry's medical care— prolonging his pain and suffering before his death. (A4 to A18).

The district court erred in dismissing the strict liability claim by disregarding New York precedent on ultra-hazardous activities and improperly relying on case law favoring EcoHealth. Under New York law, strict liability applies to abnormally dangerous conduct regardless of any precautions taken, and no exception exists for funding virus manipulation and vaccine research. In fact, Congress has already acknowledged the 'unavoidably unsafe' nature of these activities through the

17

NVICA[6] and PREP Act[7], which provide liability protection only to qualified 'covered entities' engaged in authorized countermeasures.

EcoHealth does not qualify for federal immunity or liability protection because it was neither a 'covered entity' nor engaged in authorized 'countermeasure' activity. The concepts of 'abnormally dangerous' in state law strict liability cases and 'unavoidably unsafe' in federal vaccine and countermeasure cases are legally similar, as illustrated in *Bruesewitz v. Wyeth LLC*, 562 U.S. 223 (2011); see also *Militrano v. Lederle Laboratories*, 26 A.D.3d 475, 476 (N.Y. App. Div. 2006). This distinction is particularly significant because Respondents rely heavily on federal deference in opposing the appeal, asserting that their research was NIH-funded and therefore government-sanctioned. (ROA. # 30 at 3)

---

[6] The NCVIA (National Childhood Vaccine Injury Act) is codified at 42 U.S.C. §§ 300aa-1 to 300aa-34, provides no-fault liability protection for a selection of licensed vaccines. It was enacted as Public Law 99-660 on November 14, 1986.

[7] The PREP Act (Public Readiness and Emergency Preparedness Act) is a federal law enacted in 2005 that provides liability immunity to certain "covered entities" involved in the development, manufacture, testing, distribution, administration, and use of medical countermeasures during a public health emergency. Public Law No. 109-148, Division C, § 2, 119 Stat. 2818 (2005), Codified at 42 U.S.C. §§ 247d-6d, 247d-6e. The PREP Act shields covered persons from lawsuits related to the use of covered countermeasures (e.g., vaccines, drugs, devices) during a public health emergency. (§ 247d-6d(a)). § 247d-6e, establishes the Countermeasures Injury Compensation Program (CICP) to compensate individuals injured by covered countermeasures. (ROA #36 at 11, 12)

The new evidence of EcoHealth's recent debarment by Congress (January 17, 2025) directly contradicts its defense that its research was federally authorized and sanctioned. See FN 2. This evidence alone justifies reversal of the dismissal and proceeding to discovery to further substantiate Heath's claims. The terms of the Congressional debarment action render EcoHealth's defense untenable and are appropriate for judicial notice. See *Bank Markazi v. Peterson*, 578 U.S. 212 (2016) (demonstrating how courts handle situations where Congress takes actions affecting ongoing litigation). This supports reversal and a stay pending certification of questions of state law to the Court of Appeals. See generally, *Doe v. Gonzales*, 449 F.3d 415 (2d Cir. 2006). The January 17, 2025, Congressional debarment is integral to this appeal, providing critical context about the nature of EcoHealth's GOF research at the Wuhan Lab and is therefore suitable for judicial notice by this Court in deciding this appeal. *Id.* FRE § 201.

The district court further erred in dismissing the negligence claim by wrongly concluding that EcoHealth owed no duty of care. (A165 to A179). However, Heath demonstrated that EcoHealth voluntarily assumed a duty by positioning itself as a protector of high-risk individuals in need of a vaccine against zoonotic infections. (ROA # 30 at 3). The breach of this duty foreseeably resulted in Henry's death, particularly given the overwhelming evidence that COVID-19—a man-made virus originating from EcoHealth's subcontractor lab in Wuhan—was

designed to target individuals like Henry as part of the vaccine research. By assuming this protector role, EcoHealth created a legal duty, and its breach directly contributed to Henry's death. The district court's conclusion that EcoHealth owed no duty of care was improper, especially in light of the substantial evidence that COVID-19 was a laboratory-engineered virus released from EcoHealth's subcontractor lab in Wuhan, specifically affecting high-risk individuals like Henry. (A169 to A174).

The district court also improperly accepted EcoHealth's policy-based defense, giving it every favorable inference, which is the wrong standard to apply on a motion to dismiss. FRCP 12 (b) (6). The district court erred agreeing with EcoHealth's speculative assertion that imposing liability could lead to unlimited exposure, a proliferation of claims, and discouraging scientific research. (A170).

The district court ignored the fundamental distinction between authorized, government-sanctioned research, which benefits from liability protections afforded under federal laws such as the NVCIA and the PREP Act compared to unauthorized, rogue virus research manipulating disease for profit without liability. The district court overlooked in the absence of federal liability protection(s), strict liability and negligence principles apply under New York law to Henry's wrongful death. Id.

The district court also failed to consider that a proliferation of claims was highly unlikely because the millions of deaths attributed to Covid 19 when it was at its most lethal in 2020 and 2021 are now time-barred, making any fear of a limitless liability highly unlikely. (A170, A173). Most deaths and severe illnesses that occurred during the pandemic's deadliest phase are now legally time-barred from recovery, reinforcing that this case does not create limitless liability. Most people infected with Covid 19 did not die, and those who did when Covid 19 was most lethal are barred from recovery by the statute of limitations. The specter of limitless liability does not exist here.

Today, Covid-19 is treatable with drug protocols and is far less transmissible due to widespread herd immunity. This was not the case at the time of Henry's infection in September of 2021. The good news is Covid 19 has a survival rate of 99%, making the risk of endless litigation virtually nonexistent. See Johns Hopkins Covid 19 survival rate study.[8] More important, Heath is not comparable to individuals who share only a general exposure history; Henry suffered injuries different in kind from the billions of people worldwide who may have been exposed to Covid 19, but never became seriously ill.

As of December 2022, the World Health Organization (WHO) estimated that at least 90% of the global population (8 billion people) had some level of immunity

---

[8] https://coronavirus.jhu.edu/data/mortality

21

to SARS-CoV-2.[9] Those who were merely exposed are distinct from Henry, and those who sadly died who have not filed claims are time-barred. Courts must be practical when performing a balancing test in fixing a duty point.

The fact that the SARS-CoV-2 virus was released from the Wuhan lab, supports Heath's claim there was an inability to eliminate risk through reasonable care. The later emergence of highly virulent strains like Delta and Omicron suggests there was more than one release of different strains of Covid 19, from multiple laboratories, as viruses generally mutate and weaken with time, not strengthen and become more virulent. (A12).

The district court's denial of discovery prejudiced Heath by depriving her of the opportunity to examine evidence necessary to further develop the strict liability and negligence claims. Denying inspection, interrogatories, depositions, notices to admit, and other discovery tools, was an abuse of discretion. (A53 to A55).

The district court was required to assess the plausibility of the state law claims under the federal pleading standard by applying the substantive elements of New York law, which it failed to do. Based on these clear errors, this Court should reverse, stay, and certify the strict liability and negligence questions to the New York Court of Appeals.  (ECF # 8 -2, App. Mot. Certification). These issues

---

[9] https://www.theguardian.com/world/2022/dec/03/who-estimates-90-of-world-have-some-resistance-to-covid

present matters of first impression under New York law, warranting input from the state's highest court on the application of the abnormally dangerous doctrine and negligence principles applied to the GOF virus manipulation that killed Henry.

The district court's dismissal failed to recognize these valid, well-pleaded claims and misapplied New York strict liability and negligence principles. The court erroneously accepted EcoHealth's defense that applying state law liability to GOF research would discourage scientific innovation due to fear of liability. However, liability in this case arises from the fact that EcoHealth's research exceeded federally approved limits on pathogen enhancement, and from its subsequent cover-up of the source and origin of Covid 19 at its subcontractor laboratory in Wuhan, China. (A140 to A151). Contrary to the defense, this type of liability should be discouraged and criminally prosecuted.

Our system of tort law is generally predicated on fault, attaching liability for the breach of a duty owed and a departure from the expected behavior of reasonable persons. See generally Prosser, Law of Torts § 75, at 492-496. Thus, except where, for policy reasons, the law imposes strict liability, an owner should be held liable for the creation of "dangerous or defective condition…" Nunez v Avanzo, 2021 NY Slip Op 33442, *4 [Sup Ct, Orange County 2021]. A contractor owes a duty of care to the injured party if he "launches a force or instrument of harm" or put differently, "creates or exacerbates a dangerous condition". *Espinal v*

23

*Melville Snow Contractors,* 98 N.Y.2d 136, 746 N.Y.S. 2d, 773 N.E. 2d 485 (2022).

## STANDARD OF REVIEW

This Court reviews a district court's dismissal under FRAP 12(b)(6) *de novo*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under this standard, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

A complaint survives dismissal if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when the alleged facts allow the court to reasonably infer the defendant's liability. Conclusory statements and "[t]hreadbare recitals of the elements of a cause of action" are insufficient. *Id.*

When a case raises a novel or complex issue of state law, federal courts should be cautious in dismissing claims at the pleading stage. The Supreme Court has held that where state law is unsettled, federal courts should avoid making premature determinations and instead certify unresolved questions to the state's highest court. *Lehman Bros. v. Schein*, 416 U.S. 386 (1974). Similarly, *Arizonans*

*for Official English v. Arizona*, 520 U.S. 43, 79 (1997), underscores the principle that federal courts should exercise restraint when deciding unclear or novel state law issues.

Where state law remains unsettled, certification to the New York Court of Appeals is preferable to outright dismissal. See 22 N.Y.C.R.R. § 500.27. Because this appeal challenges a Rule 12(b)(6) dismissal, this Court applies a plenary, non-deferential standard of review and may reverse if the district court failed to properly accept the factual allegations as true or applied the wrong legal standard. *Elliott v. City of New York*, 95 N.Y.2d 730, 734 (2001). Certification is warranted under 22 NYCRR § 500.27, as this case raises novel liability questions under New York law. See *United States v. Stevens*, 994 So.2d 1062 (Fla. 2008) (certifying a laboratory anthrax release liability question to Florida's Supreme Court). Similar certification was granted to the New York Court of Appeals by this Court in *In re Thelen LLP*, 24 N.Y.3d 16 (2014).

A district court's denial of discovery is reviewed for abuse of discretion, and refusal to allow discovery before ruling on a motion to dismiss is reversible error if it prejudices Heath's ability to present her case. See *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999). Here, the district court's premature denial of discovery was punitive, depriving Heath of the opportunity to inspect evidence and investigate her claims, warranting reversal. EcoHealth's recent Congressional

25

debarment on January 17, 2025, directly contradicts its previous claims that its research was federally authorized.[10] This new evidence alone justifies reversing the discovery denial and reopening the case.

## SUMMARY OF THE ARGUMENT

The district court's dismissal of Heath's complaint was clearly erroneous for multiple reasons and should be reversed. (A165 to A179).

First, the district court misapplied the Rule 12(b)(6) standard by mischaracterizing the complaint as merely challenging EcoHealth's funding of scientific research, rather than addressing its direct role in GOF virus manipulation and vaccine research, concealment of biosafety violations, and failure to disclose critical information that impacted medical responses and caused Heath's injuries. Under the *Twombly/Iqbal* standards, the district court was required to assume all well-pleaded allegations as true and to draw reasonable inferences in favor of Heath. Instead, it improperly resolved factual disputes at the pleading stage on a motion to dismiss, applying the wrong standards, in favor of EcoHealth.

Second, New York applies strict liability to *ultra-hazardous* activities under Court of Appeals precedents *Spano v. Perini Corp.*, 25 N.Y.2d 11 (1969),

---

[10] See FN 2 & 4.

*Doundoulakis v. Town of Hempstead*, 42 N.Y.2d 440 (1977), and the six-factor Restatement test (Rest. 2d Torts § 520) that applies here: EcoHealth's GOF virus manipulation presented high risks of severe harm, could not be safely conducted even with precautions, was not a common activity, and had risks that outweighed its utility. The district court ignored controlling precedent, and never even considered the Restatement Second of Tors §520 and its application establishing that an activity is abnormally dangerous if it poses a high degree of risk, cannot be made safe even with due care, and is not commonly engaged in by the general public.

EcoHealth's reliance on *Town of New Windsor v. Avery Dennison Corp.*, No. 10-cv-08611 (CS), 2012 WL 677971 (S.D.N.Y. Mar. 1, 2012) is distinguishable because it involved environmental contamination from industrial operations, where liability was contingent on long-term pollutant discharge, whereas here, EcoHealth's direct engagement in GOF virus manipulation inherently involved an *ultra-hazardous* activity under New York law, making strict liability applicable regardless of its funding sources.

Third, the district court erroneously dismissed Heath's negligence claims, failing to recognize that EcoHealth assumed a duty of care. EcoHealth claimed its research was intended "*to protect high risk individuals from zoonotic infection*"

27

then infected Henry with a man-made zoonotic virus that caused his death. By assuming a duty to protect Henry, EcoHealth also assumed a duty of care, which the district court wrongly found lacking. (A169 to A174).

Fourth, although the district court never reached the issues involving Heath's standing and the relation-back doctrine, the New York's relation-back rule, CPLR § 205(a), explicitly permits the substitution of a duly appointed estate representative after filing, provided that the original Complaint was timely, as here. EcoHealth's reliance on *Spahic v. Int'l Ctr. for Transitional Just. Inc.*, 2019 WL 7605895 (S.D.N.Y. Apr. 25, 2019), and *Ziga v. Int'l Ctr. for Transitional Just. Inc.*, 2019 WL 4784675 (S.D.N.Y. Sept. 27, 2019), is misplaced, as these cases involved forum *non conveniens*, not wrongful death actions or estate representative substitutions. (A179).

Fifth, the district court's reliance on the trial court's rulings in the state court cases *McKinnis v. EcoHealth Alliance*, No. 154003/2022 (Sup. Ct., N.Y. Cnty.) and *Vega v. EcoHealth Alliance*, No. 151852/2023 (Sup. Ct., N.Y. Cnty.), now on appeal, presumes the correctness of the trial court while the cases are still working their way through the state appellate divisions. ( A172 to A173).

To avoid inconsistent rulings, it is reasonable for this Court to certify the strict liability and negligence questions to the New York Court of Appeals, at this

28

juncture ensuring that the state's highest court determines whether GOF research is an *ultra hazardous* activity subject to strict liability and negligence principles pursuant to New York law. (2dc Doc. # 8-2, Motion for Certification.)

## ARGUMENT

### ISSUE ONE: The District Court Applied the Wrong Standard for a Motion to Dismiss.

The district court mischaracterized Heath's strict liability and negligence claims as a mere dispute over funding, failing to recognize EcoHealth's direct involvement in unauthorized Gain-of-Function (GOF) virus manipulation and research at its subcontractor laboratory in Wuhan, China, which caused Appellant's injuries.

The district court erred in dismissing the complaint under FRCP 12(b)(6) by misconstruing the nature of Heath's claims. As this Court held in *Easton v. Sundram*, 947 F.2d 1011 (2d Cir. 1991), dismissal is improper where the complaint contains facts that, if proven, would entitle the plaintiff to relief. The district court failed to follow this standard, warranting reversal.

Rather than analyzing the actual allegations and permitting even limited discovery into EcoHealth's insurance information that EcoHealth disclosed in the motion to dismiss, and blocking access to Congressional subpoena information involving EcoHealth's virus manipulation in Wuhan, the district court incorrectly

framed the case as solely concerning NIH funding EcoHealth sub-awarded to the Wuhan Lab. (A172 – A175).

Under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), a motion to dismiss requires assuming all well-pleaded factual allegations as true and construing them in the plaintiff's favor. Instead, the district court improperly resolved factual disputes, disregarding allegations and unrefuted evidence that EcoHealth was directly involved in GOF virus manipulation, concealed biosafety risks, and withheld critical research data that adversely affected medical responses to Henry's infection, prolonging his pain and suffering. (A177 to A159).

The district court heavily relied on the state court cases pending in the appellate courts; *McKinniss v. EcoHealth*, and *Vega v. EcoHealth* despite the fact that both these state cases are presently under appellate review, the district court nonetheless treated them as precedential. (A173 to A174). These state court cases improperly granted EcoHealth a judicially-created liability waiver, akin to federal protections under the NVCIA and PREP Act, even though EcoHealth's GOF research was not federally authorized. EcoHealth did not qualify for any kind of liability protection, federally or judicially-created in the state court. See *Bruesewitz v. Wyeth LLC*, 562 U.S. 223 (2011), and *Militrano v. Lederle*

*Laboratories,* 26 A.D.3d 475, 476 (N.Y. App. Div. 2006)(upholding federal no-fault liability for approved countermeasure activity).

In *McKinniss*, the Hon. Sherri L. Eisenpress improperly dismissed claims under CPLR § 3211, without allowing discovery, misapplying state law by presuming facts inconsistent with the pleadings, i.e., laboratory accidents are rare. The ruling effectively conferred a type no-fault immunity on EcoHealth despite its abnormally dangerous GOF virus manipulation, ignoring state law strict liability and negligence principles. The district court's reliance on *McKinniss* ignored its unresolved appellate status and the erroneous standards that were applied by Judge Eisenpress.

Similarly, in the state court case *Vega, et al. v. EcoHealth et al.,* Judge McCormack dismissed a similar lawsuit, also without discovery, finding that "perhaps the most significant defect in the amended complaint, and in the Plaintiffs' entire case, they must try to pin the alleged carelessness of WIV on EcoHealth." *Vega at 5.* To the contrary, Heath can indeed "pin" the laboratory release of Covid-19 on EcoHealth by a preponderance of the evidence. *Id.* Under federal law, EcoHealth was fully responsible for its subcontractors' activities and was required to report its virus research to NIH, which it failed to do, constituting *per se* negligence. (A4 to A6, A173 to A174).

The traditional balancing test of tort law already accounts for socially beneficial activities by weighing their value against their risks. Congress has already weighed the societal value of virus manipulation and vaccine research, providing no-fault liability protection for authorized countermeasures. See NVCIA and PREP Act, no-fault liability waiver. EcoHealth does not qualify. (A126 to A154). When authorized by HHS, properly conducted scientific research with appropriate safety protocols would be federally protected, while only those engaging in abnormally dangerous activities would face liability. This balanced approach promotes responsible innovation rather than discouraging it, and aligns with longstanding tort principles that encourage proper risk management in all fields, including scientific research. In other words, liability is supposed to discourage reckless and dangerous conduct that results in serious injuries and death when the risks outweigh the benefits. Manipulating disease for profit without liability is a dangerous practice.

Additionally, *Golden v. EcoHealth,* Index No. 157687/2023 (Sup. Ct. N.Y. Cnty.), is a New York County case also on appeal, Case Nos. 2024-00868, 2024-02096 (App. Div. 1st Dep't). *Golden* further underscores the need for certification. In *Golden*, Judge Eric Schumacher improperly dismissed claims taking judicial notice of disputed facts regarding Covid-19's origins. Judicial notice of disputed facts violated CPLR § 4511, as "a trial court cannot, in the name of discretion,

32

remove an issue of fact from the jury's consideration." *Amaro v. City of New York,* 40 N.Y.2d 30, 41 (1976). Whether an activity is abnormally dangerous is a jury question.

These state court appeals highlight unresolved legal questions about whether GOF virus manipulation and vaccine research, conducted without federal authorization, constitute *ultra-hazardous* activities under New York law. (A126 to A154). The district court's reliance on unsettled case law demonstrates the need for certification to the New York Court of Appeals to prevent inconsistent rulings across jurisdictions. (A173 to A174; 2dc Doc.# 8-2).

The district court erred in accepting EcoHealth's argument that liability should be precluded due to a perceived societal benefit of GOF virus research which is a jury determination, not a fact determination to be made on a motion to dismiss. Under well-established New York law, strict liability applies to ultra-hazardou*s activities* even if they provide a perceived benefit, as courts have consistently held in cases involving inherently dangerous activities, for example, nuclear contamination. *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124 (9th Cir. 2002).

The fundamental question is whether the risk of harm can be eliminated by reasonable care. Here, EcoHealth's GOF virus research could not be conducted

33

safely even with precautions. Moreover, the fact that some actors may derive phenomenal pharmaceutical profits from "unavoidably unsafe" vaccines and others are seriously injured by them, does not shield rogue research from strict liability, just as the military or industrial necessity of explosives did not exempt dynamite blasting liability in *Spano supra.*

The district court's rejection of strict liability is reversible error. For example, the case I*n re Brookhaven Nat'l Lab'y Trichloroethylene Cases*, 511 F. Supp. 3d 374 (E.D.N.Y. 2020)) cited by the defense, has been misapplied by the district court. *Brookhaven* is distinguishable because it concerned long-term environmental contamination from groundwater pollution, where liability depended on whether the defendant exercised reasonable care, whereas here, EcoHealth engaged in GOF virus, an inherently ultra-hazardous activity under New York law that is designed to be dangerous, where strict liability would apply regardless of due care.

## A. Debarment of EcoHealth and Judicial Notice

Congressional debarment of EcoHealth and its former lead scientist Dr. Daszak, effective January 17, 2025, provides further evidence of negligence *per se,* sufficient to survive a motion to dismiss. See Fn. 2 & 4. The debarment, based on EcoHealth's violations of NIH grant terms, contradicts EcoHealth's defense that its

GOF virus research was federally sanctioned and approved. This provides strong grounds for reversal. Congressional investigations leading to debarment concluded that SARS-CoV-2 was "more likely than not" released from EcoHealth's subcontractor lab in Wuhan. This further justifies the need for discovery and an amendment to the Complaint to include this highly, significant, newly available evidence, the result of a two-year federal investigation into EcoHealth's role in the lab-origin of Covid 19.

## B. Unresolved State Law Issues Requiring Certification to the New York Court of Appeals

Federal courts will employ abstention doctrines to respect state judicial processes and avoid unnecessary federal intervention in unsettled state law matters. The *Pullman* abstention doctrine applies where a federal constitutional issue hinges on an unresolved question of state law. *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). When state law is unsettled and could be dispositive of the case, abstention is warranted to allow the state's highest court to clarify the law. (2dc Doc. 3 8-2).

Here, the strict liability and negligence issues—specifically, whether GOF virus manipulation constitutes an *ultra-hazardous* activity subject to strict liability under New York law, remain unsettled. The district court's reliance on *McKinniss* and *Vega*, which are still under appellate review, underscores the risk of

35

inconsistent adjudications between state and federal courts. Rather than predicting how the New York Court of Appeals would rule, this Court should allow New York's highest court to definitively resolve these questions through certification.

A nearly identical issue was presented in *United States v. Stevens*, 994 So. 2d 1062 (Fla. 2008), where the Eleventh Circuit certified to the Florida Supreme Court the question of whether the laboratory release of the hazardous biological agent anthrax was subject to strict liability under state law. Given the similar novel legal issues in this case, certification to the New York Court of Appeals is likewise appropriate to ensure state law is applied correctly.

The Eleventh Circuit certified the issue of whether strict liability applied to a government lab's accidental release of anthrax. The Florida Supreme Court ultimately ruled that there was negligence, but because sovereign immunity barred strict liability against the government, it found negligence but made clear that strict liability would have applied to a private entity engaged in similar *ultra-hazardous* biological research. *Id. at 1070.*

The Eleventh Circuit's decision to certify rather than assume Florida law on this issue provides persuasive precedent for why this Court should certify the strict liability issue to the New York Court of Appeals rather than making its own determination. The Florida Supreme Court's ruling recognized that lab releases of

dangerous biological agents fall under the framework of strict liability for abnormally dangerous activities conducted by private actors, reinforcing that this question must be resolved at the highest state court level.

Federal courts routinely certify state law questions in such circumstances. In *In re Thelen LLP*, 24 N.Y.3d 16 (2014), this Court certified a question regarding New York's "unfinished business doctrine" to the New York Court of Appeals, ensuring the state's highest court resolved an issue of first impression. As this Court has emphasized, "If there is any new reason to doubt an earlier federal court's decision as to state law, the state's highest court should be given the opportunity to weigh in." *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 65 (2d Cir. 2018).

### C. Errors in the District Court Finding

The district court erroneously concluded that Heath failed to establish proximate cause between GOF virus manipulation and Henry's infection. However, New York courts have consistently held that proximate cause is a jury question, not a determination for dismissal at the pleading stage. See *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315 (1980) (holding that proximate cause is generally an issue of fact unless "only one conclusion may be drawn"). Here, the causal chain is clear: EcoHealth's GOF research manipulated bat coronaviruses to

infect human cells, SARS-CoV-2 was released from the subcontractor lab in
Wuhan, and Henry was fatally infected. The district court improperly dismissed the
case before discovery, preventing Heath from further substantiating her claims.

### 1. No Duty Owed Under New York Law

The district court improperly relied on *Hamilton v. Beretta* U.S.A. Corp., 96
N.Y.2d 222 (2001), finding that EcoHealth owed no duty of care. However,
*Hamilton* involved firearm manufacturers who did not directly control how third-
party gun owners used their products. In contrast, EcoHealth actively created the
risk by engineering GOF-enhanced viruses and targeted Henry for its research.
This situation aligns more closely with *Palsgraf v. Long Island R.R. Co*., 248 N.Y.
339 (1928), where liability depended on whether the defendant's actions directly
created a foreseeable risk of harm. EcoHealth's direct engagement in pathogen
enhancement inherently created a foreseeable risk of viral escape and harm,
establishing a duty under New York law. (A49).

### 2. Funding An Activity Does Not Eliminate Liability

The district court incorrectly concluded that EcoHealth's role was limited to
funding. (A172, A178). However, EcoHealth's own admissions, congressional
findings, and newly available discovery materials contradict this. See Fn Unlike a

passive funding entity, EcoHealth actively oversaw, directed, and participated in high-risk GOF research. It was directly involved in securing and shipping bat coronaviruses for enhancement at its lab in Wuhan. Unlike mere funding entities, EcoHealth actively oversaw, directed, and participated in high-risk GOF research, including securing and shipping bat coronaviruses for enhancement at to its partner scientists all over the world.

New York law holds that an entity cannot escape liability by delegating ultra-hazardous activities to third parties. See *Rosenbaum v. Branster Realty Corp.*, 276 A.D. 167 (1st Dep't 1949) (holding that an employer remains liable for inherently dangerous activities conducted by independent contractors). EcoHealth's own contracts anticipated "accidents" and "evacuations," demonstrating knowledge of the substantial risk, and further justifying strict liability.

### 3. Speculative Harm

The district court erroneously dismissed Heath's claims as speculative. However, New York courts have routinely held that when an injury is foreseeable and directly linked to the defendant's actions, it does not qualify as speculative. See *Johnson v. Bryco Arms*, 304 F. Supp. 2d 383 (E.D.N.Y. 2004) (finding that liability attaches when the defendant's conduct foreseeably contributes to harm, even when third-party actions are involved). Heath has provided extensive factual

evidence —including government reports, congressional hearings, and EcoHealth's internal documentation—demonstrating the direct link between EcoHealth's GOF research and Henry's fatal infection.

### 4. Concerns Over Unlimited Liability

The district court improperly accepted EcoHealth's public policy argument that allowing liability could lead to a "flood" of litigation. (A170). However, New York courts do not dismiss valid claims based on hypothetical concerns about liability expansion. See *In re Opioid Litigation*, 2018 N.Y. Slip Op. 31228 (N.Y. Sup. Ct. 2018) (holding that potential large-scale litigation is not a reason to dismiss meritorious claims). Further, liability is already limited by the statute of limitations, meaning that fears of "limitless exposure" are unfounded. The majority of Covid 19 related wrongful death claims are already time-barred, reinforcing that this case presents a unique and specific harm distinct from the general population's exposure to Covid 19 that was timely filed.

### D. Questions to be Certified

The district court's dismissal was premised on the erroneous assumption that New York law does not recognize strict liability or negligence for GOF virus manipulation, despite the Appellate Division never having addressed this issue.

Rather than reviewing the prematurely dismissed claims by the district court, this Court should first certify the following questions to the New York Court of Appeals under 22 NYCRR § 500.27:

1. Whether GOF virus manipulation using misdirected federal monies and privately funded vaccine research constitute an *ultra-hazardous* activity subject to strict liability under New York law; and

2. Whether EcoHealth owed a non-delegable duty of care under state negligence principles for GOF research conducted at its subcontractor's laboratory in Wuhan?

This Court has emphasized that certification is appropriate where state law is unsettled and resolution by the state's highest court will clarify legal standards. *See Thelen LLP v. Seyfarth Shaw LLP*, 24 N.Y.3d 16 (2014). In cases involving novel liability questions, certification prevents premature dismissals and ensures the state court has the opportunity to rule on its own legal framework. Certification to the New York Court of Appeals is the most appropriate course of action to ensure these legal issues are resolved by the state's highest court before further federal adjudication in this appeal. See *U.S. v Stevens supra.* (2dc Doc. # 8-2).

**ISSUE TWO: New York's Strict Liability and Negligence Principles Apply to Abnormally Dangerous Activity and Cover-up.**

EcoHealth is strictly liable for Heath's injuries under New York's strict liability and negligence laws, given its unauthorized GOF virus manipulation and vaccine research—both ultra-hazardous activities—conducted at its subcontractor laboratory in Wuhan, China.

EcoHealth is strictly liable under New York law for GOF virus manipulation as an *ultra-hazardous* activity.

**A. Strict Liability**

New York courts recognize strict liability for abnormally dangerous activities. Yet the district court failed to apply the six-factor test under *Restatement (Second) of Torts* § 520, as the well-established standard for adjudicating strict liability for abnormally dangerous conduct. This omission alone warrants reversal.

EcoHealth's activities were abnormally dangerous, regardless of any allegations of compliance with NIH contracts and federal safety regulations—which it failed to meet. GOF virus manipulation in Wuhan remained unauthorized and inherently hazardous. The Secretary of HHS has recognized GOF research as dangerous and "unavoidably unsafe," even when federal safety protocols are followed, and adequate warnings are provided. As stated in *Militrano v. Lederle Laboratories,* 26 A.D.3d 475, 476 (N.Y. App. Div. 2006), products that cannot be made safe in the current state of human knowledge are "unavoidably unsafe" under comment k of Section 402A of the Restatement (Second) of Torts.

In New York, this means strict liability applies to EcoHealth's abnormally dangerous activity in creating SARS-CoV-2 that caused Heath's damages. "Certain activities, due to their abnormally dangerous nature, give rise to strict liability." *Nicholson v. Kevspan Corp.,* 65 A.D.3d 1025, 1026,885 N.Y.S.2d 106 (2d Dept. 2009). "Proof that will establish strict liability will almost always establish negligence." *Lancaster Co v. Propane Gas,* 75 A.D.2d 55, 62 (N.Y. App. Div. 1980). Creating hazards with water can be "abnormally dangerous." See *Doundoulakis v. Town of Hempstead*, 42 N.Y.2d 440, 398 N.Y.S. 2d 401, 368 N.E.2d 24 (1977).

EcoHealth's conduct satisfies all six factors of the Restatement (Second) of Torts § 520 for strict liability as follows:

## 1. Existence of a High Degree of Risk of Harm

Courts have found strict liability appropriate where an activity carries inherent dangers even when conducted with due care. See *In re Hanford Nuclear Reservation Litig.,* 292 F.3d 1124 (9th Cir. 2002) (holding nuclear contamination subject to strict liability). Like nuclear experimentation, GOF virus research carries inherent catastrophic risks, making it *per se ultra-hazardous*.

## 2. Likelihood That the Harm Will Be Great

Unlike controlled lab experiments, GOF virus research introduces pathogens into environments where containment failures can result in global harm. See *United States v. Stevens*, 994 So.2d 1062 (Fla. 2008) (finding strict liability for an anthrax research facility). The release of SARS-CoV-2 led to millions of deaths, demonstrating the catastrophic potential. The Amended Complaint details the catastrophic harm caused by GOF research. The virus that EcoHealth created led to the death of Heath's husband, demonstrating the ultimate consequence of these experiments.

### 3. Inability to Eliminate the Risk by Exercising Reasonable Care

EcoHealth was aware of the risk its research posed to scientists, lab technicians, and high-risk individuals like Henry. Despite this knowledge, it conducted GOF research at a BSL 2 lab, failing to meet even the minimum federal safety standards. Even in BSL-4 laboratories, virus containment failures occur despite maximum precautions. EcoHealth's GOF research was conducted at a BSL-2 facility—biosafety equivalent to a dentist's office—demonstrating that reasonable care could not eliminate the inherent risk. This research cannot be rendered safe through reasonable care, making strict liability applicable.

### 4. Extent to Which the Activity Is Not a Matter of Common Usage

GOF research in a densely populated area like Wuhan magnifies its inherent risks. Courts have recognized that location increases strict liability risk. See *Doundoulakis*, 42 N.Y.2d at 448 (holding that proximity to public areas increased liability for hazardous activities).

EcoHealth's GOF research was classified as a "bioweapon agent" under the Defense Advanced Research Project Agency (DARPA) grant application *Project Defuse*. *Project Defuse* was a grant application prepared by Defendant Daszak and EcoHealth's partner scientists, and alleged co-conspirators, Dr. Ralph Baric, of the University of North Carolina (UNC), and Dr. Shi Zhen Li of the Wuhan Lab, known as the "bat lady."(A140 to A143). *Project Defuse* is a veritable cookbook for making Covid 19 using GOF, which corroborated Heath's claims that EcoHealth was engaging in abnormally dangerous virus manipulation in violation of federal and state law at the Wuhan Lab. *Id.*

The rejection of *Project Defuse* by DARPA as too risky does not negate the fact that it openly outlined the blueprint for GOF research and the creation of Covid 19, which was already well underway in EcoHealth's partner laboratories when the funding request was rejected by DARPA in 2018. DARPA's refusal to fund Project Defuse demonstrated EcoHealth's GOF activity in Wuhan posed a national security risk, capable of being weaponized. (A-120, A-284, A-309, A-377).

Conducting such dangerous research in a foreign lab controlled by China's People's Liberation Army (PLA) heightened the risks. The development of new viruses in a lab is entirely uncommon and abnormally dangerous.

### 5. Inappropriateness of the Activity to Its Location

EcoHealth's GOF research took place in populated areas at University of North Carolina (Chappel Hill), University of Colorado (Denver), and the densely populated Wuhan, China, increasing the risk of harm. Courts have recognized that dangerous activities conducted in densely populated areas increase liability.

Dynamite blasting in the countryside differs significantly from blasting in densely populated city. Similarly, GOF research conducted at a BSL 2 lab in a densely populated province like Wuhan, rather than a secure remote facility, made the activity particularly hazardous. Federal regulations required virus manipulation and enhancement to be conducted at a BSL 4 Lab, which EcoHealth ignored using a BSL-2 lab, the equivalent of a dental office. See 18 U.S.C. § 1001; 31 U.S.C. §§ 3729-3733; 42 U.S.C. § 262a(b)(1).

### 6. Extent to Which the Activity's Value Is Outweighed by Its Dangers

This case is too complex to be dismissed at the pleading stage without discovery. The district court's ruling creates a judicially-created liability waiver for

EcoHealth, eliminating the specter of punitive damages that encourages reckless vaccine research and "public health for profit" endeavors. Manipulating viruses for profit without liability is a dangerous practice. Courts have recognized that liability must act as a deterrent to companies conducting *ultra-hazardous* research. GOF virus manipulation, designed for profit without oversight, presents to great a risk. No good has come from GOF that could not have been achieved safely using authorized scientific methods for vaccine research.

## B. Negligence

Appellant alleged a negligence claim that was more than sufficient to survive a motion to dismiss. It is fundamental that "the alleged tortfeasor must have owed the injured party a duty of care." *Forbes v. Aaron,* 81 A.D.3d 876, 877, 918 N.Y.S. 2d 188 (2d Dept. 2011). Whether a particular act of negligence is a substantial cause of the plaintiff's injuries is a fact-question for the jury, as it turns on questions of foreseeability. EcoHealth's subcontractor agreements with the Wuhan Lab, specifically, anticipated "accidents" and "evacuations" at the facility, demonstrating the foreseeability of virus release and injury. (A37 to A52). GOF virus manipulation included combining bat coronaviruses to test their ability to infect humans, a critical step in the alleged engineering of SARS-CoV-2. This was

EcoHealth's and Wuhan Lab's man-made virus designed to be abnormally dangerous, hence, creating the need for a highly lucrative vaccine. Id.

### 1. Duty, Breach and Injury

EcoHealth owed  a non-delegable duty of care to ensure that their GOF research was conducted safely and reported accurately, as required under federal regulations and basic tort principles.  As the New York Court of Appeals recognized in *Glanzer v. Shepard,* 233 N.Y. 236, 239 (1922), "[i]t is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all."  Had Respondents complied with their duty to report GOF findings, public health officials could have intervened before tragedy struck.

In *Marino v. Lehmaier*, 173 N.Y. 530, 539 (N.Y. 1903), it was held that the violation of a statute constitutes some evidence of negligence and should be submitted to the jury. (A29, A33-A35). See 48 CFR § 52.246-8 (prime contractors are responsible for compliance and oversight of subcontractors); 31 U.S.C. § 3729-3733 (False Claims); 2 CFR § 200.331(prime contractor responsibility for ensuring subcontractor compliance with all applicable federal regulations); 35 U.S.C. § 200-212), (the prime contractor remains responsible). (ROA. # 10 at 24 – 25, A115).

48

EcoHealth's negligent failure to warn and misrepresentations, foreseeably increased the risk of uncontained viral replication, directly leading to Henry's death by infection.  The duty question posed by *Glanzer* and its progeny turns on whether the acts benefited the actor or others.  Here, EcoHealth's actions were self-serving, prioritizing personal financial and professional gain over public safety, thus creating a dangerous virus with an "*eye toward creating vaccines…*" Vega at 5.

EcoHealth argues it owed no legally cognizable duty, again relying on the gun case, *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 750 N.E.2d 1055 (2001), claiming there is no special relationship between the parties. (ROA # 46 at 12 -13).  However, there was a direct nexus between Heath and EcoHealth because Henry was targeted as *high risk* for zoonosis infection, and the SARS-CoV-2 virus rapidly spread from the EcoHealth's laboratory into Henry's lungs causing him to suffocate to death.  This was by design and was not an accident.

As stated *supra Hamilton* is inapplicable because EcoHealth was not a passive manufacturer of a lawful product but an active participant in unlawful GOF virus research, manipulation, and concealment of an *ultra-hazardous* virus, which directly caused Henry's death by infection. Unlike in *Hamilton*, where firearm manufacturers did not directly create or distribute harm to any specific plaintiffs,

49

EcoHealth's actions directly targeted Henry's vulnerability, for a vaccine through unauthorized GOF pathogen enhancement. This distinguishes *Hamilton* from this case.

Unlike a firearm manufacturer distributing legal products, EcoHealth engaged in unlawful GOF and concealed biosafety risks it was required to disclose. Courts have held that actors who actively create and control the risk—rather than merely enabling it—owe a direct duty of care. *See In re September 11 Litigation*, 280 F. Supp. 2d 279 (S.D.N.Y. 2003) (finding liability for airline security failures contributing to harm). See *Johnson v. Bryco Arms*, 304 F. Supp. 2d 383 (E.D.N.Y. 2004), *United States v. Philip Morris USA Inc., et al.*, 449 F. Supp. 2d (D.C. 2006), *In re Opioid Litig.*, N.Y. Slip Op. 31228 (N.Y. Sup. Ct. 2018), *In re Vioxx Products Liability Litigation*, 414 F. Supp 2d 574(E.D. La. 2007), and *Pilliod v. Monsanto Co.*, 67 Cal.App.5th 591 (Cal. Ct. App. 2021). (ROA # 36 at 47 – 48).

These cases found personal liability in the midst of a general public crisis when injuries were different in kind, not degree, than those of the general public, such as those who were exposed or inconvenienced by Covid 19 but never became seriously ill.

EcoHealth was misleading the district court when it denied it was targeting high-risk individuals with enhanced pathogens. (ROA 3 30 at 3). EcoHealth

specifically stated in its memorandum in support of dismissal, and in the *McKinniss* and *Vega* cases they now raise in opposition, the same statement: "*The purpose of this research is to identify high risk populations so international actors can leverage their resources to address potential pandemics.*" *Id.* It is misleading to assert otherwise.

## 2. Exaggerated Concerns of Limitless Liability

EcoHealth's characterization of this case as an overbroad challenge to a global health is an exaggeration mischaracterizing the claims. Contrary to EcoHealth's concern about opening a floodgate of litigation, or disproportionate, insurer-like liability, these defenses typically apply to damages mitigation, not pleading sufficiency on a motion to dismiss. Even if additional claims were to emerge, they have not yet occurred, and if they did New York courts are well-equipped to handle omnibus or multi-district type litigations. See *In re N.Y. City Asbestos Litig.* [1ˢᵗ Dept, Nov. 16, 2021, No. 2021-06326]; *In re Opioid Litig.*, 2018 N.Y. Slip Op. 31228 (N.Y. Sup. Ct. 2018). (A170).

EcoHealth's argument under *Palka v. ServiceMaster Mgt. Servs. Corp.* (83 N.Y.2d 579, 1994) is likewise misapplied. EcoHealth owed a specific duty to Heath rather than a general duty to the public. EcoHealth contends that Heath's claims attempt to impose a broad duty on all scientific researchers engaged in virus-

related studies, which *Palka* warns against. They argue that there was no direct relationship between EcoHealth and Henry EcoHealth claims because the connection is too attenuated to establish the necessary nexus between its virus manipulation and Henry, as required by *Palka*. This is being applied incorrectly.

*Palka* involved a contractual maintenance agreement between a hospital and a cleaning service, where liability was limited to a specific duty owed to hospital patients. *Palka* does not apply to situations involving abnormally dangerous activities or *ultra-hazardous* conduct, which impose a heightened duty under New York law. The crucial distinction is that EcoHealth was not merely a funding entity but an active participant in high-risk virus manipulation, directly involved in performing experiments at the Wuhan Lab.

In short, *Palka* does not stand for the proposition that liability disappears merely because the class of potential plaintiffs is large or because funding is involved. Courts have recognized duty where a defendant's conduct creates a direct and foreseeable risk of harm, even absent a traditional relationship. Here, the release of a man-made virus from EcoHealth's research program caused the precise harm that Heath alleges—her husband's death from Covid 19.

### 3. Serious Injuries Distinct from General Exposure to Covid 19.

EcoHealth's argument that liability should be precluded due to the widespread impact of Covid 19 is refuted by *Johnson v. Bryco Arms,* 304 F. Supp.

2d 383 (E.D.N.Y. 2004). In *Johnson*, the court held that a defendant cannot escape liability merely because many people were harmed, stating: 'No matter how large the group injured by a public nuisance, if the injuries are different in kind, liability applies.' Here, Henry suffered a direct, fatal infection, which distinguishes his case from the general public's exposure to Covid 19.

Here, Henry suffered a direct, fatal infection, which is distinct from the general public's exposure to Covid 19, but who never became ill or only mildly ill. It is not the same as economic losses caused by the pandemic. The injuries suffered by Henry were not merely common to the general population; instead he contracted a deadly virus released from the Wuhan lab due to EcoHealth's negligence, was denied adequate medical care and treatment and died  Most people exposed to Covid 19 were asymptomatic or oligosymptomatic and survived infection.

EcoHealth cannot invoke *Palka* to shield itself from liability when it knowingly engaged in an inherently dangerous activity. Unlike the limited duty in *Palka*, the duty here arises from EcoHealth's active involvement in a process that increased the risk of a pandemic, making it responsible for foreseeable harm resulting from that conduct to high risk people targeted for a vaccine.

Today in the U.S., more people die every day from opioids and cigarette smoking than from Covid 19, and those responsible for the opioid epidemic and tobacco-related deaths have been held liable in MDL cases. See *United States v. Philip Morris USA Inc., et al.*, 449 F. Supp. 2d (D.C. 2006), *In re Opioid Litig.*, N.Y. Slip Op. 31228 (N.Y. Sup. Ct. 2018); *In re September 11 Litigation*, 280 F. Supp. 2d 279 (S.D.N.Y. 2003), *In re Vioxx Products Liability Litigation*, 414 F. Supp 2d 574(E.D. La. 2007), and *Pilliod v. Monsanto* Co., 67 Cal.App.5th 591 (Cal. Ct. App. 2021).

Physical injuries to particular persons are generally sufficient to constitute harm different in kind under New York law". *Andersen v. Univ. of Rochester*, 91 A.D.2d 851, 458 N.Y.S.2d 404 (1982). Plaintiffs' allegations for duty based upon physical injuries are neither novel nor unique. Restatement (Second) of Torts, § 821C emf. D ("When the public nuisance causes personal injury to the plaintiff . . . the harm is normally different in kind from that suffered by other members of the public and the tort action may be maintained.") W. Prosser, Private Action for Public Nuisance, 52 Va. L. Rev. 997, 1012 (1966). (A16).

**ISSUE THREE:  EcoHealth's Argument that Heath Lacked Standing Ignores the Relation-Back Doctrine.**

The district court erred in dismissing Heath's claims and denying her amendment and caption change, despite New York's relation-back doctrine, CPLR

§ 205(a), which permits substitution of a duly appointed estate representative in a wrongful death action. (A152 to A154).

EcoHealth incorrectly characterizes Heath's timely filing of her lawsuit as some sort of "tactical maneuver" because it was filed without first obtaining letters of administration from Colorado State Probate Court. (A This characterization is unfounded. Appellant is an average American whose husband Henry was killed by Covid 19. (ROA # 30 at 16, #38 at 10). She does not engage in "tactical maneuvering" regarding personal matters of such grave importance as a matter of practice. Her husband Henry became infected while they were locked down in their home together, fearing for their lives, as a man-made virus infected Henry, ultimately killing him. Henry was hospitalized and died alone in isolation a slow agonizing death. Heath bears no responsibility for the tragedy of Henry's death or the statute of limitations for that matter. In bringing this case Heath seeks justice, not a tactical maneuver.

### A. New York's Relation-Back Doctrine Expressly Preserves Wrongful Death Claims

New York law allows wrongful death plaintiffs through CPLR § 205(a), to substitute an estate representative after the initial filing of a complaint. The Court of Appeals has consistently held that an estate representative's subsequent appointment relates back to the original filing date. See *Carrick v. Cent. Gen.*

*Hosp.*, 51 N.Y.2d 242, 249 (1980) (holding that "the relation back doctrine is to be liberally applied, particularly in wrongful death actions where the need for such a doctrine is most compelling").

In *Camenate v City of NY*, 59 A.D.3d 152, the Third Department advises: "[h]owever, as *Carrick* and its progeny make clear, the only factors necessary for invoking CPLR § 205 (a) are that there has been a prior timely commenced action, providing the defendants with notice of the claims against them asserted by or on behalf of the injured party, and that the dismissal was not on the merits but for reason of a defect such as the lack of a qualified administrator, all of which elements are present herein. No additional factors are mandated by *Carrick* or the authority derived therefrom (see e.g. *Mendez v Kyung Yoo*, 23 AD3d 354, 806 NYS2d 67 [2005]; *Vasquez v Wood*, 18 AD3d 645, 795 NYS2d 638 [2005])."

## § 205. Termination of action.

(a) New action by plaintiff. If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff, or, if the plaintiff dies, and the cause of action survives, his or her executor or administrator, may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period. Where a dismissal is one for neglect to prosecute the action made

> pursuant to rule thirty-two hundred sixteen of this chapter or otherwise, the judge shall set forth on the record the specific conduct constituting the neglect, which conduct shall demonstrate a general pattern of delay in proceeding with the litigation.

Heath applied for personal representative status on April 1, 2024, and received her appointment on April 12, 2024. Under CPLR § 205(a), this appointment related back to her timely commencement of the action. *See Karras v. Margaret Tietz Ctr. for Nursing Care, Inc.*, 61 Misc.3d 1222(A) (Sup. Ct. Queens Cnty. 2018) (confirming that "where a plaintiff commences an action prior to appointment as an estate representative, the subsequent appointment relates back to validate the earlier filing"). (A152 to A154).

### B. EcoHealth's Authorities Are Inapplicable to Relation-Back in Wrongful Death Actions

EcoHealth's reliance on *Spahic v. Int'l Ctr. for Transitional Just. Inc.*, 2019 WL 7605895 (S.D.N.Y. Apr. 25, 2019), and *Ziga v. Int'l Ctr. for Transitional Just. Inc.*, 2019 WL 4784675 (S.D.N.Y. Sept. 27, 2019), are entirely misplaced. Neither case addresses wrongful death actions or estate representative substitutions. Both decisions involve forum *non conveniens* determinations, which have no bearing on the application of CPLR § 205(a)'s relation-back provisions.

EcoHealth's attempt to characterize Heath's timely filing as a "tactical maneuver" disregards New York's statutory scheme specifically designed to preserve wrongful death claims.

### C. The Relation-Back Doctrine Serves Important Policy Objectives

New York courts have repeatedly emphasized that "the relation-back doctrine is designed to prevent a defendant from acquiring a technical advantage when he has timely notice of the pending action." *Caffaro v. Trayna*, 35 N.Y.2d 245, 251 (1974). Here, EcoHealth had timely notice of Heath's claims and suffered no prejudice from her subsequent formal appointment as estate representative.

The Second Circuit has similarly recognized the importance of preserving wrongful death claims through relation back. See *Williams v. United States*, 947 F.2d 37, 39 (2d Cir. 1991) (applying New York's relation-back doctrine to preserve a wrongful death claim where the plaintiff obtained formal appointment after filing). CPLR § 205 (a).

Respondents point to *Vega v EcoHealth supra* on appeal in the Second Department, and the trial court's statements regarding representative status, that is respectfully, error. In *Vega*, the state supreme court incorrectly assumed that some plaintiffs' lacked standing because they had not yet obtained letters of administration. However, this was error. Plaintiff *Vega* had her appointment before filing, and a second Plaintiff *John Longinotti's* obtained an appointment that

58

related back to the commencement of the case. EcoHealth misapplies *Vega* and New York's relation-back doctrine under CPLR § 205 (a), which allows substitution of a personal representative after filing.

## CONCLUSION

The district court's dismissal was legally erroneous and should be reversed. It misapplied the Rule 12(b)(6) standard, improperly resolved factual disputes at the pleading stage, and misunderstood New York precedent on strict liability and negligence. To prevent inconsistent rulings across jurisdictions, this Court should reverse the district court's decision and remand for further proceedings. Alternatively, given the unsettled nature of the strict liability and negligence issues related to GOF research, this Court should certify the following questions to the New York Court of Appeals under 22 NYCRR § 500.27:

1. Whether Gain of Function virus manipulation using misdirected federal monies and privately funded vaccine research constitute an *ultra-hazardous* activity subject to strict liability under New York law; and

2. Whether EcoHealth owed a non-delegable duty of care under state negligence principles for Gain of Function research conducted at its subcontractor's laboratory in Wuhan?

Appellant respectfully requests this Court reverse, remand for discovery, and certify the strict liability and negligence issues to the New York Court of Appeals.

March 11, 2025

/s/ Patricia Finn, Esq.

Attorney for Plaintiff -Appellant Heath

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify, based on the word-counting function of my word processing system (WordPerfect, Version 11), that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B):

1. Exclusive of the exempted portions specified in Fed. R. App. P. 32(a)(7)(B)(iii), this brief contains fewer than 13,000 words, to wit, 12,523 words;

2. The brief has been prepared in a proportional spaced format using Times New Roman type (14 point type).

*/s/ Patricia Finn, Esq.*

# CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing brief upon the below named counsel(s) via ECF at the below email addresses:

List Lawyers Here

Dated this the 11 day of March, 2025

/s/ Patricia Finn, Esq.