# 25-100-cv

# United States Court of Appeals
# for the Second Circuit

SUSAN I. HEATH, Proposed Representative of the Estate of Henry A. Hurst, III, Deceased

*Plaintiff-Appellant,*

– v. –

ECOHEALTH ALLIANCE, INC.,

*Defendant-Appellee,*

Appeal from the United States District Court for the Southern District of New York (No. 1:23-cv-08930) (Hon. Jennifer L. Rochon, J.)

## BRIEF FOR DEFENDANT-APPELLEE IN OPPOSITION TO PLAINTIFF-APPELLANT'S OPENING BRIEF

Andrew N. Krinsky
Nels. T. Lippert
Michael J. Grudberg
Juan Olivo-Castro
Jessica Russo
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, NY 10018
(212) 216-8000

*Attorneys for Defendant-Appellee*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee certifies as follows:

Defendant-Appellee is a non-profit entity with no corporate parent and no publicly held corporation that owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .......................................2

STATEMENT OF CASE .......................................................................3

SUMMARY OF THE ARGUMENT ..........................................................7

ARGUMENT ...................................................................................9

    I.    ECOHEALTH ALLIANCE OWES NEITHER A GENERAL DUTY OF CARE TO THE PUBLIC AT LARGE, NOR TO MR. HEATH SPECIFICALLY ..........................................................................9

    II.    FUNDING OF SCIENTIFIC RESEARCH IS NOT AN ABNORMALLY DANGEROUS ACTIVITY SUFFICIENT TO TRIGGER STRICT LIABILITY ...............................................................................13

    III.    APPELLANT'S STATUS AS REPRESENATIVE HAS NO BEARING ON THE SUFFICIENCY OF THE ALLEGATIONS IN THE COMPLAINT ................................................................17

CONCLUSION .................................................................................18

CERTIFICATE OF COMPLIANCE .........................................................19

CERTIFICATE OF SERVICE ................................................................20

007578\22\171152316.v6

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Brookhaven Nat'l Lab'y Trichloroethylene Cases,*
    511 F. Supp. 3d 374 (E.D.N.Y. 2020) ................................................15

*Doundoulakis v. Town of Hempstead,*
    42 N.Y.2d 440 (N.Y. 1977) ...............................................................13

*German v. Fed. Home Loan Mortg. Corp.,*
    885 F. Supp. 537 (S.D.N.Y. 1995) ....................................................15

*Hamilton v. Beretta U.S.A. Corp.,*
    96 N.Y.2d 222 (N.Y. 2001) .............................................10, 11, 12, 13

*Johnson v. Jamaica Hosp.,*
    62 N.Y.2d 523 (N.Y. 1984) ...............................................................11

*McCarthy v. Olin Corp.,*
    119 F.3d 148 (2d Cir. 1997) ..............................................................12

*Nat'l R.R. Passenger Corp. v. New York City Hous. Auth.,*
    819 F. Supp. 1271, 1279 (S.D.N.Y. 1993) ........................................15

*Hartke on behalf of Estate of Hartke v Bonhams & Butterfields
    Auctioneers Corp.,*
    24-258, 2024 WL 4380315 (2d Cir. Oct. 3, 2024) ............................17

*Palka v. Servicemaster Mgt. Services Corp.,*
    83 N.Y.2d 579 (N.Y. 1994) ......................................................9, 10, 11

*Pulka v. Edelman,*
    40 N.Y.2d 781 (N.Y. 1976) ...............................................................10

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...............................................................................5

Fed. R. Civ. P. 15(a) ...............................................................................3, 5

ii

## PRELIMINARY STATEMENT

The District Court correctly held that Appellant-Plaintiff Susan Heath, as proposed representative of the Estate of Henry A. Hurst, III ("Heath" or "Appellant") failed to assert sufficient factual nonconclusory allegations against Appellee-Defendant EcoHealth Alliance, Inc. ("EcoHealth" or "Appellee") to maintain either a negligence or strict liability claim under New York law. Appellant's arguments rely exclusively on the premise that COVID-19 originated from a laboratory leak from the Wuhan Institute of Virology (the "WIV"), and that such an outbreak occurred due to either: (a) the negligent actions of EcoHealth Alliance in funding coronavirus research at the WIV; or (b) EcoHealth Alliance engaged in abnormally dangerous activity by funding coronavirus research. Thus, according to Appellant, EcoHealth Alliance and the WIV knowingly developed SARS-CoV-2, the virus that causes COVID-19 to target high-risk populations, and either negligently or intentionally released the virus into the ambient air, resulting in the death of Mr. Heath.

Setting aside the absence of particular fact allegations to support these outlandish claims, the District Court observed that at best the allegations in the Complaint sought to hold EcoHealth liable in tort for *funding* scientific research, and that there is simply no authority supporting such a theory. Appellant fails to explain, nor can she explain, how EcoHealth could have prevented the purported outbreak, nor does Appellant offer any evidence supporting this contention. Moreover, such a

1

theory of liability would require a court to fashion a duty of care owed to the public at large when providing funds for scientific research pursuant to a government award—a state of affairs that would not only result in an unimaginable proliferation in claims, but would also effectively place liability on EcoHealth for all consequences of the COVID-19 pandemic.

New York law cautions against placing such unbounded responsibility on alleged tortfeasors that have had no direct relationship with a plaintiff. Appellant is asking the Court to create new channels of liability because she cannot fit her theory of liability into any traditional tort claims. Appellant is essentially asking the Court to fit the square peg into the round hole. Combined with public policy considerations, the burden on the courts, and the curtailing of scientific research, Appellant cannot feasibly state a negligence or strict liability claim that can withstand a motion to dismiss. Accordingly, this Court should affirm the District Court's Opinion and Order dismissing Appellant's Complaint in its entirety.

## <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1.      Did Appellant's Complaint contain sufficient factual allegations to impose a general duty of care owed by EcoHealth to the public at large?

2.      Is the funding of scientific research under a government grant in and of itself an ultrahazardous or abnormally dangerous activity?

007578\22\171152316.v6

3.     Would amendment of the Complaint reflecting Appellant's status as personal representative of Mr. Heath's estate be futile under Fed. R. Civ. P. 15(a)?

## STATEMENT OF THE CASE

EcoHealth Alliance is a nonprofit scientific organization engaged in the study of emerging infectious diseases. (A 26.) Working together with governmental, nongovernmental, educational, and other research institutions, EcoHealth promotes pandemic prevention research and climate conversation to reduce the risk of zoonotic spillover.[1] (*Id.*) In 2014, the National Institutes of Health ("NIH") issued EcoHealth a five-year award for the Project, *Understanding the Risk of Bat Coronavirus Emergence,* funded under grant 1R01AI110964 (the "Project"). (A 27.) EcoHealth received additional awards for each of the years of the Project, from 2015 through 2019. (*Id.*) As part of the Project, EcoHealth Alliance was to subcontract and allocate funds to the WIV, in accordance with the NIH's approval of the Project. (*Id.*) Throughout the term of the Project, EcoHealth Alliance executed appropriate subcontracts with the WIV detailing the subcontracted work performed by the WIV in connection with the Project. (*Id.*)

In December 2019, months after the term of the Project had ended, reports of a cluster of cases of pneumonia began emerging from Wuhan, Hubei Province,

---

[1]     The study of zoonotic spillover refers to the transmission of pathogens from animal populations carrying an infectious disease to human populations.

3

China. It was later determined that the outbreak was caused by a novel coronavirus, SARS-CoV-2, and that the pneumonia symptoms were actually the product of the new COVID-19 disease.

Appellant alleges that Mr. Heath resided in Aurora Colorado at the time of his death. (A 159.) Mr. Heath died on October 11, 2021, allegedly from COVID-19. (*Id.*) The record below does not reflect: where Mr. Heath contracted COVID-19; if Mr. Heath was vaccinated; whether Mr. Heath followed any of the safety protocols issued by local and federal authorities to reduce the spread of COVID-19; or how Mr. Heath became infected with COVID-19. As set forth in further detail below, these omitted details are critical to establishing whether EcoHealth owed Mr. Heath a duty of care.

Appellant commenced this action by filing her Complaint on October 12, 2023, asserting counts for negligence and strict liability against EcoHealth on grounds that EcoHealth is purportedly responsible for Mr. Heath's death from COVID-19. (A 166.) In the Complaint, Appellant alleges that at "the time [EcoHealth] funded monies to the [WIV], [EcoHealth] knew or should have known that the [WIV] was conducting research into coronaviruses, including gain of function research." (A 5.) By the same token, Appellant alleges that EcoHealth is strictly liable for engaging in the same conduct, regardless of the level of care exercised in funding the research for the Project:

4

> 25. Defendant EHA, in funding monies the Wuhan Institute of Virology to conduct research into coronaviruses, engaged in an abnormally dangerous activity, and is liable for the resulting harm to the Plaintiff's deceased husband, Henry A. Hurst, III, regardless of any care taken by EHA to prevent it, given that the harm is the type of risk which makes the activity abnormally dangerous in the first place.

(A 7.)

On March 11, 2024, EcoHealth moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim . (A 167.) Appellant filed her opposition to EcoHealth's  motion on April 29, 2024 (*Id*.) and EcoHealth filed a reply on May 13, 2024 *See* ECF Doc. Nos. 37-38.

In a detailed Opinion and Order dated December 19, 2024, the Honorable Jennifer L. Rochon, U.S.D.J., granted EcoHealth's motion, and dismissed Appellant's Complaint, with prejudice, and denied Appellant leave to amend pursuant to Fed. R. Civ. P. 15(a). (A178-79.) The District Court held that Appellant's negligence claim failed because the Complaint did not contain factual allegations to support EcoHealth Alliance owed Mr. Heath, or the public at large, a duty of care under New York law. (A 174.) Specifically, the District Court held "[appellant] has not alleged any facts that Defendant controlled, or was positioned to control, the acts of the WIV or how it carried out its research, or even that Defendant's funding contributed  to  gain-of-function  research." (*Id*.) Further,  the  District  Court

5

emphasized the policy considerations that militated against imposing a duty of care on EcoHealth, including the rise in claims that would inevitably swell in the courts, and the "chilling of scientific research." (A 173.)

As for Appellant's strict liability claim, the District Court held that the Complaint did not contain "facts that support a claim that Defendant's funding of biomedical research had a high risk of harm or that there was a great likelihood of harm resulting from that funding." (A 175-76.) As the Court observed, while Appellant alleges that gain-of-function research poses a high-degree of risk, the Complaint lacked plausible allegations to support an inference that EcoHealth was engaged in gain-of-function research, or that its funding of the Project, which was directed by the NIH, "was directed to the WIV's gain-of-function research." (A 176.) In addition, the District Court observed that Appellant's strict liability claim was undermined by her negligence claim, the premise of which is that EcoHealth failed to exercise reasonable care. (A 177.)

Finally, leave to amend the Complaint to reflect Appellant's status as an appointed personal representative of Mr. Heath's estate was denied, on the ground that such an amendment would not cure the Complaint's pleading defects. (A 178.)

## SUMMARY OF THE ARGUMENT

This Court should affirm the District Court's dismissal of the Complaint under well settled New York legal and public policy principles militating against the imposition of such broad liability.

Appellant cannot identify a duty of care that was breached by EcoHealth. Appellant does not, and cannot, contend that EcoHealth had any dealings with Mr. Heath, and in particular any direct dealings relating to Mr. Heath's contracting COVID-19. Accordingly, Appellant's negligence claim depends upon the existence of a general duty of care owed to the public at large by EcoHealth. New York does not impose such broad responsibility. The burden of placing such a duty on a lone defendant – a duty to protect the general public against the worldwide spread of an infectious disease – is outweighed by any social benefit derived by its imposition. As the District Court noted, the Complaint did not contain allegations to support a conclusion that EcoHealth was in the best position to protect against the alleged harm. (A 172.)

Furthermore, significant policy concerns weigh in favor of dismissal. As the District Court observed, extending such a duty to EcoHealth "simply because it funded research by the WIV would result in the proliferation of claims, create a high likelihood of insurer-like liability, and risk the chilling of scientific research." (A 173.) Specifically, the threat of curtailing scientific research constitutes a significant

policy consideration which should guide this Court's determination. The scientific community has faced significant backlash following the pandemic, including pullbacks in funding and public outcry regarding scientists response to the pandemic. A ruling holding that researchers can be held strictly liable for *funding* scientific research would serve as the death-knell for the scientific research into infectious diseases. Clearly researchers are unlikely to expose themselves to the limitless scope of responsibility in the event of an incident.

Appellant's strict liability claim requires the same outcome, as none of the factors considered by New York courts when assessing whether an alleged activity was abnormally dangerous or ultrahazardous support holding EcoHealth liable. Contrary to Appellant's vague assertions, the funding of scientific research pursuant to a government's funding award is not inherently dangerous. Nor is the likelihood of harm inherently great – otherwise, why would the government fund the Project? (A 177.) Moreover, and as set forth in the Complaint (A 4-5), the fact that risk of harm could be eliminated through the exercise of reasonable care lifts EcoHealth's funding of the Project out of the realm of strict liability. Also there are no credible allegations that the WIV was an inadequate facility for the Project. In fact, the opposite is true; the NIH funded the Project in part because of the WIV's biosafety rating. (A 27.)

Finally, Appellant's proposed amendment to the Complaint does not cure these pleading deficiencies. (A 178.) The pleading deficiencies plaguing the Complaint will remain irrespective of Appellant's status as representative for Mr. Heath's estate, and on appeal, Appellant has offered nothing to discredit the District Court's analysis.

Therefore, this Court should affirm the District Court's Opinion and Order dismissing Appellant's Complaint in its entirety with prejudice.

## ARGUMENT

I. **ECOHEALTH ALLIANCE OWES NEITHER A GENERAL DUTY OF CARE TO THE PUBLIC AT LARGE, NOR TO MR. HEATH SPECIFICALLY**

The allegations in the Complaint fail to establish the existence of a duty of care owed by EcoHealth to Mr. Heath that would subject EcoHealth to liability. Absent a duty of care, Appellant cannot maintain a negligence claim under New York law, and thusher Complaint warranted dismissal. *See Palka v. Servicemaster Mgt. Services Corp.,* 83 N.Y.2d 579, 586 (N.Y. 1994) ("a duty of reasonable care owed by a tortfeasor to an injured party is elemental to any recovery in negligence"). In assessing whether a duty of care exists, courts traditionally fix the duty point "by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting

9

the expansion or limitation of new channels of liability." *Palka*, 83 N.Y.2d at 586. While courts may impose a duty where none existed before, "such an imposition must be exercised with extreme care, for legal duty imposes legal liability." *Pulka v. Edelman*, 40 N.Y.2d 781, 786 (N.Y. 1976) (declining to impose a general duty of care on garage operators to protect pedestrians from the negligent conduct of its patrons); *See also Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232 (N.Y. 2001), *opinion after certified question answered*, 264 F.3d 21 (2d Cir. 2001) ("[A]ny extension of the scope of duty must be tailored to reflect accurately the extent that its social benefits outweigh its costs.")

The Complaint is devoid of any allegations of any direct dealings between Mr. Heath and EcoHealth. As the District Court noted, negligence claims against EcoHealth that lack allegations of direct dealings between the plaintiff and EcoHealth have already been dismissed by courts throughout the State of New York. (A 172 ("New York courts that have considered similar claims against EHA have dismissed complaints where, as here, plaintiffs failed to allege that EHA had direct dealings with any of the plaintiffs.") Indeed, Appellant does not, and cannot, contend that EcoHealth and Mr. Heath had any sort of interaction leading up to Mr. Heath's alleged COVID-19 infection. Thus, the only way Appellant can sustain her negligence claim against EcoHealth is if the Court imposes a general duty of care on EcoHealth to the public at large, because New York law requires "that the damaged

10

plaintiff be able to point the finger of responsibility at a defendant owing, not a general duty to society, but a specific duty to him." *Johnson v. Jamaica Hosp.*, 62 N.Y.2d 523, 527 (N.Y. 1984).

As discussed above, courts will give considerations to several factors before imposing a legal duty of care. *Palka*, 83 N.Y.2d at 586. The District Court held these factors militate against imposing a general duty of care on EcoHealth. The holding in *Hamilton* is a lodestar for this analysis. In *Hamilton*, the New York Court of Appeals responded to certified questions from this Court on whether handgun manufacturers owed a duty of care to victims of handgun violence based on their marketing and distribution of guns. 96 N.Y.2d at 230. The plaintiffs in *Hamilton* predicated their argument for the imposition of a duty of care on the gun manufacturers, in part, on the claimed foreseeability of the harm their conduct generated. *Id.* at 234 ("Plaintiffs predicate the existence of this protective duty— particularly when lethal or hazardous products are involved—on foreseeability of harm. . .") The Court declined to extend a general duty of care to these handgun manufacturers, stressing concerns that such a duty would subject defendants to potentially unlimited liability. *Id.* at 234. In addition, the Court noted that the connection "between defendants, the criminal wrongdoers and plaintiffs is remote," and observed that imposing a duty on handgun manufacturers to care for handgun victims requires "a more tangible showing that defendants were a direct link in the

11

causal chain that resulted in plaintiffs' injuries." *Id.* The Court also emphasized that the social benefit of imposing such a duty on defendants would only be outweighed by the costs and burdens of imposing that duty. *Id.* at 236.

Appellant similarly contends that Mr. Heath's injuries from a COVID-19 infection were foreseeable to EcoHealth, and thus, give rise to a legal duty of care in accordance with New York law. *See* Appellant's Br. at 13 and 49. This is not the law in New York.[2] "[A] duty and the corresponding liability it imposes do not rise from mere foreseeability of the harm." *Hamilton* 96 N.Y.2d at 235. Even if a foreseeable outcome of funding research at the WIV was a global pandemic, and it was not, that alone does not provide grounds for imposing a duty of care on EcoHealth. Whether a duty of care can be imposed on EcoHealth depends on the policy considerations weighed by the Court in *Hamilton*. 96 N.Y.2d at 232. Appellant does not proffer any method for circumscribing the potential class of plaintiffs. *Id.* at 234. In fact, Appellant downplays these concerns as "[e]xaggerated," despite the number of Americans who have died from a COVID-19 infection surpassing one million persons before this lawsuit was commenced. *See* Appellant's Br. at 51. Further, Appellant has not offered any information in the District Court, or now on appeal, regarding Mr. Heath's COVID-19 infection, including when he first infected,

---

[2] " In tort cases, foreseeability is often confused with duty." *McCarthy v. Olin Corp.*, 119 F.3d 148, 157 (2d Cir. 1997)

where he infected, what protocols he observed, amongst other details. Just like in *Hamilton*, "a more tangible showing that [EcoHealth] were a direct link in the causal chain that resulted in plaintiffs' injuries", should be required before imposing a duty of care. *Hamilton*, 96 N.Y.2d at 232.

Perhaps most importantly, EcoHealth respectfully submits that the negative consequences of imposing such a duty outweigh any social benefits. *Id.* at 236. The indirect effects of the pandemic have been the widespread pull-back of medical research funding. Attaching legal liability to funders of medical research for the conduct of others would gravely discourage future research endeavors. Paired with the undeniable rise in claims that would overwhelm the courts, if EcoHealth were held to a duty of care to the public at large, the District Court correctly refrained from creating such a duty of care.

## II. FUNDING OF SCIENTIFIC RESEARCH IS NOT AN ABNORMALLY DANGEROUS ACTIVITY SUFFICIENT TO TRIGGER STRICT LIABILITY

Contrary to Appellant's assertions, the funding of medical research, pursuant to a government grant, does not trigger strict liability under New York law. Application of the factors outlined in *Doundoulakis v. Town of Hempstead*, 42 N.Y.2d 440 (N.Y. 1977)stablishes that EcoHealth was not engaged in abnormally dangerous activities. Furthermore, it is critical to note that EcoHealth was never contracted to, and did not engage in, or fund, gain-of-function research, despite

13

Appellant's unsupported insistence that EcoHealth should be held strictly liable on this basis. (*See* A 29; A 38 – 47.)[3]

First, there is nothing in the record that would allow this Court to conclude that funding research – with government approval – into SARS-like coronaviruses poses a high risk of harm. In fact, the record controverts Appellant's position. EcoHealth's funding of research by the WIV commenced in 2014. (A 29.) Thus, even if all the allegations of the Complaint are accepted as true, the WIV conducted research over the prior five years without incident. It was only *after* the term of the Project that reports of pneumonia began surfacing in Wuhan. (A 29.) The fact that EcoHealth had been providing funds to the WIV to conduct research for this length of time, without incident belies the assertion that the funding of research poses a high risk of harm.

Second, Appellant argues that "[u]nlike controlled lab experiments, [gain-of-function] virus research introduces pathogens into environments where containment failures can result in global harm," and thus, any resulting harm from this research would be great. Appellant's Br. at 44. Again, and as the District Court observed, EcoHealth did not partake in gain-of-function research, and the Complaint lacks any credible assertions that EcoHealth controlled, or was in a position to control the

---

[3]     In fact, the greater the exposure to liability the more important it is to allow the defendant to fully defend itself to ensure due process. Strict liability precludes defendants from raising certain defenses that may be available.

WIV's alleged gain-of-function research. (A 174.) Accordingly, this factor does not support Appellant's claim.

Third, and perhaps the "most useful" factor for analyzing Appellant's claim, is the inability to eliminate risk.[4] If the risk of conducting research into SARS-like coronaviruses can be eliminated by the exercise of reasonable care – as Appellant acknowledges in the Complaint – Appellants cannot establish that the very same conduct was abnormally dangerous. (*Compare* A 5 *with* A 7, Compl. ¶¶ 14 and 25); *See In re Brookhaven Nat'l Lab'y Trichloroethylene Cases*, 511 F. Supp. 3d 374, 392 (E.D.N.Y. 2020) ("In this case, '[i]mplicit in plaintiff's allegation is the acknowledgment that had defendants exercised due care,' the risks from TCE exposure could have been mitigated or abated. Thus, the third element of the test remains unsatisfied."); citing *Nat'l R.R. Passenger Corp. v. New York City Hous. Auth.*, 819 F. Supp. 1271, 1279 (S.D.N.Y. 1993). This implicit acknowledgment dooms Appellant's strict liability claim.

As to the fourth and fifth factors, Appellant cannot establish that funding (or performing) scientific research in a laboratory setting is uncommon. While not as common as driving a car, scientific research has been funded by the United States

---

[4] *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 570 (S.D.N.Y. 1995).

government for decades, and there is nothing in the record to suggest that performing this research in a laboratory is extraordinary or inappropriate.[5]

Finally, and as several trial courts within New York have noted, the value of Respondents' research to the public outweighs the alleged risks. Moreover, as the District Court correctly observed, this determination was already made by the NIH and NIAID when they approved and funded EcoHealth's research proposal. (*See* A 177.) The fact that scientific research may pose some risk, does not mean that it is inherently risky to justify the imposition of strict liability. This sentiment was echoed in *Vega et al., v. EcoHealth Alliance et al.*, where similar allegations of liability were raised against EcoHealth. 603152/2023, NYSCEF Doc. 41 (N.Y. Sup. Ct. Nassau Cnty. Dec. 15, 2023). In dismissing plaintiffs' strict liability claim in that action, the Trial Court noted that EcoHealth's research activities were aimed at creating vaccines to quell future pandemics, and thus, worth the alleged risks:

> "EcoHealth explained that its research was part of an effort to determine the dangerousness of these viruses, and to test them with an eye toward creating vaccines to either avoid or quell future pandemics. It is not known how many lives the COVID-19 vaccines saved, nor can we know the impact of the pandemic had the vaccines had been available at the beginning. But if the goal is to have a vaccine ready before the next pandemic occurs, the court

---

[5] It is unclear on what basis Appellant now maintains that some the research for the Project occurred in Colorado or North Carolina (*See* Appellant's Br. at 46), but to reiterate, EcoHealth did not engage in, on fund gain-of-function research, and the laboratory research related to the Project was to occur only at the WIV. *See* A 29; A 38 – 47.

16

> sees that as a necessary and vital function could save lives
> worldwide, and **therefore is worth the associated risks**."

*Vega et al.*, 603152/2023, NYSCEF Doc. 41 at 10-11, (N.Y. Sup. Ct. Nassau Cnty.

Dec. 15, 2023) (emphasis added).

At bottom, Appellant is requesting extraordinary relief – to hold parties strictly liable for the medical research they fund, even if that funding was provided through a government research award. Most importantly, to create such liability without any plausible fact allegation indicating the extent of EcoHealth's involvement in the WIV's purported gain-of-function research would set a disturbing precedent. The Court should not countenance such an expansion, one that would undermine research funding going forward.

### III. APPELLANT'S STATUS AS REPRESENATIVE HAS NO BEARING ON THE SUFFICIENCY OF THE ALLEGATIONS IN THE COMPLAINT

Appellant's status as a representative of Mr. Heath's estate fails to alter the outcome of this appeal. That is because Appellant's status as a representative has no bearing on the factual allegations supporting the claims in the Complaint. (*See* A. 178 ("Plaintiff's claims fail to state a claim regardless of whether Plaintiff amends her Complaint to Change her status to personal representative.") Put simply, were Appellant to recommence this action as the appointed personal representative of Mr. Heath's estate, dismissal of the Complaint would still be warranted for the reasons set forth above. *See Hartke on behalf of Estate of Hartke v Bonhams & Butterfields*

17

*Auctioneers Corp.*, 24-258, 2024 WL 4380315 at *2, (2d Cir. Oct. 3, 2024) (affirming denial of leave to amend complaint to reflect plaintiff's appointment as the estate's representative when the amendment would be futile to curing the pleading's deficiencies).

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court affirm the District Court's dismissal of Appellant's Complaint.

By: _____

Juan Olivo-Castro
1350 Broadway
New York, New York
Tel.: (212) 216-8000
Email: jolivo@tarterkrinsky.com

*Attorneys for Defendant-Respondent*
*EcoHealth Alliance Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this motion complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and Second Circuit Local Rules 29.1(c) and 32.1(a)(4)(A) because this brief is 4,375 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Dated: New York, New York
     April 22, 2025

By: _____
      Juan Olivo-Castro

007578\22\171152316.v6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 22, 2025, I electronically filed the foregoing with the Clerk of Court for the U.S. Court of Appeals for the Second Circuit by using the ACS system. Participants in the case who are registered ACS users will be served via the ACS system.

Dated: New York, New York
      April 22, 2025

By: _____
      Juan Olivo-Castro